341 A.2d 492
**COMMONWEALTH of Pennsylvania**
v.
**Byron D. COLLINS, Appellant.**

Supreme Court of Pennsylvania.

Argued Jan. 14, 1974.

Decided July 7, 1975.

Barry H. Denker, F. Michael Medway, Philadelphia, for appellant.

Arlen Specter, Dist. Atty., Richard A. Sprague, 1st Asst. Dist. Atty., David Richman, Asst. Dist. Atty., Chief, Appeals Div., L. A. Perez, Jr., Philadelphia for appellee.

Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

MANDERINO, Justice.

Appellant, Byron Collins, was tried and convicted by a jury of murder in the first degree for the killing of one

Richard Johnson. Post-verdict motions were denied and this appeal followed.

In his post-verdict motions, appellant contended that the conduct of the prosecutor throughout the trial deprived the appellant of a fair trial because of the prejudicial effect the prosecutor's conduct had on the jury. The court en banc, with one member dissenting, agreed that the prosecutor's conduct was on many occasions "reprehensible" and "censurable," but denied relief, holding that the misconduct and improprieties constituted harmless error.

In this appeal, the prosecution admits that the conduct of the prosecutor during the trial was reprehensible and censurable. The prosecution also admits that "[f]or many of the remarks there can be no rational justification. . . ." The only issue before us, therefore, is whether the admitted misconduct of the prosecutor was harmless error. We conclude that it was not.

In recent years, this Court has had the unfortunate duty to consider allegations of improper prosecutorial trial conduct on several occasions. In *Commonwealth v. Potter*, 445 Pa. 284, 285 A.2d 492 (1971), we reversed appellant's conviction and granted a new trial saying,

"This Court has made clear ' . . . that the prosecuting attorney enjoys an office of unusual responsibility, and that his trial conduct should never be vindictive or attempt in any manner to influence the jury by arousing their prejudices.' " (Citations omitted.)

*Id.* at 287, 285 A.2d 493–494.

In *Commonwealth v. Revty*, 448 Pa. 512, 295 A.2d 300 (1972), we reversed appellant's judgment of sentence and granted a new trial saying,

"the district attorney is a quasi-judicial officer, representing the Commonwealth, which seeks no victims, but only justice; . . ."

[A] society cannot permit its agent to attempt to prejudice the minds of the jury against the accused by making wholly unsupported inferences that the accused deliberately deceived the jury."

*Id.* at 516 and 517, 295 A.2d at 302.

Again in *Commonwealth v. Toth,* 455 Pa. 154, 314 A. 2d 275 (1974), appellant was granted a new trial because the district attorney "either intentionally or because of a lack of knowledge of the rules of evidence, misled the jury." *Id.* at 157, 314 A.2d at 277. *See also Commonwealth v. Lipscomb,* 455 Pa. 525, 317 A.2d 205 (1974).

In all of these opinions, we referred to the ABA Standards Relating to the Prosecution Function. These standards recognize that "[t]he prosecutor is both an administrator of justice and an advocate; he must exercise sound discretion in the performance of his functions," and that "[t]he duty of the prosecutor is to seek justice, not merely to convict." ABA Standards, Prosecution function, supra, § 1.1(b), and § 1.1(c).

Section 5.8 of the Standards deals with the prosecution's argument to the jury. It provides:

(a) The prosecutor may argue all reasonable inferences from evidence in the record. It is unprofessional conduct for the prosecutor intentionally to misstate the evidence or mislead the jury as to the inferences it may draw.

(b) It is unprofessional conduct for the prosecutor to express his personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant.

(c) The prosecutor should not use arguments calculated to inflame the passions or prejudices of the jury.

(d) The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader

than the guilt or innocence of the accused under the controlling law, or by making predictions of the consequences of the jury's verdict.

Though there is no dispute in this case that the misconduct of the prosecutor was most serious, we have reviewed our recent decisions because they clearly indicate that the misconduct of a prosecutor may have serious consequences in unfairly influencing the jury and depriving the accused of a fair trial. In this case, the prosecutor's misconduct began with his opening address to the jury and continued throughout the trial until he had completed his closing argument. The record of the trial in this case is over 1,000 pages long. A reading of the record discloses that the misconduct of the prosecutor was not limited to isolated moments of error in the heat of trial advocacy. The record is replete with instances of prosecutorial misconduct which permit only one reasonable conclusion: from the very beginning of the trial, the prosecutor adopted a strategy calculated to try the case on his own terms rather than within the rules of evidence and the standards of professional conduct. He attempted to divert the jury from its duty to decide the case on the evidence. He appealed to the passions and prejudices of the jury. He attempted to curry favor with the jury by being overly solicitous of their need to obtain the truth. He responded to defense objections, most of which were sustained, by constantly indicating that defense counsel was using delaying tactics. He said to the jury in referring to defense witnesses "I don't know which liar you want to believe." He dramatically portrayed for the jury what a slow and painful death the victim must have suffered if he had to lie a number of hours after he was shot in the mud and rain. He injected his own personal opinions about the cruelty inflicted on one who has had to "lie with his face in the mud, with the rain coming down, without a blessed soul there to put

their hand on his shoulder and say, 'Don't worry about it; everything will be all right,' even though he was dying . . . ."

He persisted throughout the trial in trying the appellant as a heroin pusher even though this was not an issue of fact in the trial, and even though the appellant admitted his occupation when he took the stand. Even though the appellant was on trial for murder, he told the jury "there comes a time when you either push justice or indirectly you push the filth that is heroin . . . ." He called the crime a "classic, vicious, violent first-degree murder" and told the jury they had to have "courage" to say yes to a first degree murder verdict. He told the jury to "let the message go out into the community that the citizens which we all are will not put up with 'this kind of viciousness and violence.' "

He constantly made it appear that the defense counsel were not trying the case properly. He spoke to the jury about the "smoke screen" being put up by defense counsel, who were, according to the prosecutor, only attempting "to throw mud in the eyes of the jurors." He then compared the mud allegedly being thrown by defense counsel to the mud that the victim "had to lie in and die."

He told the jury that in most homicide cases which he had tried, he was always able to find "somewhere inside some sorrow, some pity for the defendant." He also said, however, that "this is the first case I have ever had where I have reached inside myself and I have tried to pull up some kind of concern or pity for the defendant, and I can't find it."

On many occasions throughout the trial, the court admonished the prosecutor. The prosecutor's conduct occasioned, at various times during the trial, the following remarks from the court:

"What you are saying, in effect, is that we can disregard the rules of evidence."

.    .    .    .    .    .    .

"Why do you always appeal to the jury and say the jury is entitled to. The jury is entitled to hear only relevant testimony. I wish you would stop making those remarks."

.    .    .    .    .    .    .

" .   .   . I do direct the district attorney not to interpose these side remarks, particularly your remark that these witnesses know each other. It was completely uncalled for."

.    .    .    .    .    .    .

"I don't want to hear your suggestions except at the bar-side."

.    .    .    .    .    .    .

"Don't characterize every objection as a delaying tactic. He has a right to object."

.    .    .    .    .    .    .

"I have asked what you intend to prove and you have avoided me   .   .   ."

.    .    .    .    .    .    .

"There you go again, avoiding my question. You have avoided it twice. Are you going to avoid it a third time?"

.    .    .    .    .    .    .

"There you go again."

.    .    .    .    .    .    .

"Off on a tangeant [sic], as you always do."

.    .    .    .    .    .    .

"I feel that way strongly. You say, 'I have a right to cross-examination,' with a tone as though it is unlimited, not under the control of the Court. It is under the control of the Court   .   .   . But you can't divert the trial into a long exploration of the drug traffic."

.    .    .    .    .    .    .

"There you go again, twisting something. You're twisting what we were just discussing into something else."

. . . . . . .

"Don't subject this jury to matters that are irrelevant."

. . . . . . .

" . . . The statement was read to the jury, in my opinion, by the district attorney as to give the impression or implication that the defendant had not arrived at [the] apartment at 9:10 but at 9:30, and, in my opinion, as I read the statement, it doesn't bear that interpretation . . . It's my duty to correct what I consider to be a grave mistake on your part."

. . . . . .

"May I say that is typical of the tactics that he has demonstrated in the entire trial."

. . . . . . .

" . . . I have had quite a time in controlling you in your cross-examination. I will not allow you to divert the main issue in this case."

. . . . . . .

"Sir, you ought to be committed for a statement like that, that I am restricting you from showing the motive in this case. That is ridiculous. To what exaggeration and heights will you get?"

. . . . . . .

■■ We cannot agree with the prosecution that the impact of the prosecutor's misconduct was harmless. As we stated in *Commonwealth v. Davis*, 452 Pa. 171, 177, 305 A.2d 715, 719 (1973), "[o]ur analysis of the gravity and impact of the error is guided by two general precepts." We must first be able to declare a belief that the error was harmless beyond a reasonable doubt before it will be held harmless and a judgment of sentence affirmed. Furthermore, the burden of establishing that

the error was harmless beyond a reasonable doubt must be borne by the prosecution. Applying this two part analysis in *Davis* we said that if there is a reasonable possibility that the error "might have contributed to the conviction . . . might have moved 'the minds of an average jury' (footnote omitted) toward conviction . . ." the error cannot be held harmless.

In presenting his case at trial, the defendant here contended that he was not present at the scene of the homicide, but was at his father's house at the time. Central to the success of such a defense is the credibility of the defendant and of his witnesses. There is no doubt that the prosecutor's conduct could have affected the jury's determination of the credibility of witnesses. The prosecution contends that the evidence against the appellant was overwhelming. This would be true only if it was accepted that the prosecution witnesses were telling the truth. This however, is exactly what the jury was to determine in an atmosphere worthy of an American court of law, not a gladiator's arena.

The prosecution argues that the prosecutor's misconduct was provoked by the conduct of defense counsel. We must unequivocally disagree. Although there are one or two instances in the record where defense counsel made inappropriate remarks, defense counsel did not improperly provoke the prosecutor's misconduct. Frequently the prosecutor improperly attempted to characterize defense counsel's actions as delaying tactics; these remarks were "provoked" by defense counsel's objections. We can hardly fault defense counsel, however, for objecting in an attempt to guarantee a fair trial to his client. Most of the objections were sustained. A lawyer's legitimate objections can hardly be an excuse for unprofessional conduct.

Judgment reversed and a new trial granted.

JONES, C. J., not participating.