387 A.2d 829

**COMMONWEALTH of Pennsylvania**

v.

**William STARKS, Appellant (two cases).**

Supreme Court of Pennsylvania.

Argued April 21, 1977.

Decided June 2, 1978.

52

Louis Lipschitz, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., Gaele Barthold, Philadelphia, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

POMEROY, Justice.

Appellant, William Starks, was convicted by a jury of murder of the first degree and unlawfully carrying a firearm. After post-trial motions were denied, Starks was sentenced to a term of life imprisonment on the murder charge and to a concurrent sentence of two and one-half to five years on the firearms conviction. This appeal followed.[1]

The record discloses that on August 24, 1973, Philadelphia police, responding to a radio call, found one Bennie Fields lying in the cartway of Rodman Street in Philadelphia. Fields had been shot six times and died soon after the police

1. *See* the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, 17 P.S. § 211.202(1).

removed him to the hospital. In November, 1973, appellant was arrested and preliminarily arraigned on unrelated charges. Immediately following that preliminary arraignment, Starks was further detained by police for questioning concerning the shooting of Fields. Appellant quickly admitted shooting the decedent in a dispute over a drug deal. He was then charged with the murder of Fields and ultimately tried for that crime. The Commonwealth's principal proof was the confession. Taking the stand in his own defense, Starks maintained that he did not shoot Fields. He contended that the statement was untrue and had been involuntarily given following repeated threats and beatings by the police.

Appellant now alleges that a number of trial errors require that he be tried again. We agree that the assistant district attorney exceeded the bounds of proper prosecutorial advocacy and that the appellant was thereby deprived of a fair trial. A new trial must therefore be awarded.[2]

As we have stated time and again, a prosecuting attorney is an officer of the court and has a duty to see that justice is not compromised in an effort to seek convictions. *Commonwealth v. Collins*, 462 Pa. 495, 341 A.2d 492 (1975); *Commonwealth v. Revty*, 448 Pa. 512, 295 A.2d 300 (1972). As we put it in *Commonwealth v. Potter*, 445 Pa. 284, 287, 285 A.2d 492, 494 (1971):

**2.** Because of our disposition of the case it is unnecessary to reach the merits of the following assignments of error: (1) that the lower court erred in refusing to suppress appellant's confession as the result of an unnecessary delay between arrest and arraignment; (2) that the statement should have been suppressed as the fruit of an unlawful arrest made without probable cause; (3) that the court improperly instructed the jury with respect to the presumption of innocence; and (4) that the prosecutor and the trial court prejudiced the appellant by referring to a claim of privilege said to have been asserted by a lawyer who advised the defendant at the arraignment.

Although the insufficiency of the evidence is not advanced as a ground for reversal on this appeal, we have examined the record as required by the Act of February 15, 1870, P.L. 15, § 2, 19 P.S. § 1187. Stark's confession, if believed, was sufficient evidence upon which to base a verdict of guilt beyond a reasonable doubt.

"This Court has made clear '. . . that the prosecuting attorney enjoys an office of unusual responsibility, and that his trial conduct should never be vindictive or attempt in any manner to influence the jury by arousing their prejudices.' *Commonwealth v. Toney*, 439 Pa. 173, 180, 266 A.2d 732, 736 (1970). Likewise, the ABA Standards Relating to the Prosecution Function recognize: 'The prosecutor is both an administrator of justice and an advocate; he must exercise sound discretion in the performance of his functions.' ABA Project, Prosecution Function, supra at § 1.1(b). Furthermore, '[t]he duty of the prosecutor is to seek justice, not merely to convict.' Id. at § 1.1(c)."

With respect to the closing argument of the lawyer for the Commonwealth, we have expressly adopted the rationale of the ABA Standards Relating to the Prosecution Function. See, *e. g., Commonwealth v. Joyner*, 469 Pa. 333, 365 A.2d 1233 (1976); *Commonwealth v. Cronin*, 464 Pa. 138, 346 A.2d 59 (1975); *Commonwealth v. Collins, supra.* We again set forth the provisions of Section 5.8 of those Standards:

"(a) The prosecutor may argue all reasonable inferences from evidence in the record. It is unprofessional conduct for the prosecutor intentionally to misstate the evidence or mislead the jury as to the inferences it may draw.

"(b) It is unprofessional conduct for the prosecutor to express his personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant.

"(c) The prosecutor should not use arguments calculated to inflame the passions or prejudices of the jury.

"(d) The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law, or by making predictions of the consequences of the jury's verdict."

A review of the prosecutor's closing argument in the case at bar exposes a substantial deviation from these standards.

As stated above, the prosecution's case was bottomed on Starks' confession, and the defense was mainly directed to an attack upon the voluntariness of that confession, alleging that it was coerced by the police. In response to that charge, the assistant district attorney in his closing address to the jury stated: ". . . think the worst about Detective Morris and think the worst about Detective Richardson, but for Christ's sake, you cannot believe they were born yesterday." Again, he adjured, "If you believe that Detective Richardson and Detective Morris engaged in beating this defendant and beat him into signing a paper that they prepared, that were not the words of this defendant, I want you to understand, I mean, I want you to send him home . . . God help us if the police are going to do what the defendant says. If that is what you believe, ladies and gentlemen, not only let the defendant go, but I would be concerned about staying around myself." We believe that such expressions by the prosecutor indirectly conveyed his personal belief concerning critical issues at trial in violation of our established standards. See, *e. g., Commonwealth v. Joyner, supra; Commonwealth v. Cronin, supra; Commonwealth v. Russell*, 456 Pa. 559, 322 A.2d 127 (1974); *Commonwealth v. Lipscomb*, 455 Pa. 525, 317 A.2d 205 (1974); Code of Professional Responsibility, Disciplinary Rule DR 7–106(C)(4).

We are also of the opinion that the prosecutor placed unnecessary emphasis on the involvement of drugs in the case. The drug transaction between Starks and Fields, the victim, was peripheral only, not a central feature of the case.[3] But throughout the closing argument, the prosecutor repeatedly spoke of the defendant as a "pusher" and a "dealer":

**3.** The statement allegedly volunteered by the defendant to the police and introduced at trial did indicate that a drug-related deal supplied the motive for the murder. To this extent the use of drugs as a factor in the crime was properly before the jury. Compare *Commonwealth v. Collins*, 462 Pa. 495, 341 A.2d 492 (1975).

"Don't you think that would be fairer, be fairer to the cocaine pusher, to the cocaine distributor. Don't you think that would be fairer?" (Trial Record at 480–481)

\* \* \* \* \* \*

"When the police have a cocaine pusher, cocaine distributor who is involved in the killing of a cocaine pusher on the streets, because the pusher welshed on the deal involving a shipment of cocaine, if you believe that fairness after the defendant has been duly warned, not just by the police but by a defense lawyer that he does not have to talk if he does not want to. . . ." (Trial Record at 481)

The drug issue was further emphasized when the assistant district attorney stated:

"So, I don't come to this case with what I regard as extraneous principles of philosophy. I come to this case with the cruel, hard knowledge that it is just not this defendant who is supplying the drugs, it is just not Benny Fields who is out there pushing them, it is that somewhere, and I know it, I have seen them, there is some child whose body is being polluted right now by those drugs, right now. Don't you see, that sight, the sight of that child, that affects my view of what is fair. The sight of that child does have an influence on me, but that kind of fairness has no place in the case. This business about the bankers and the like, all that philosophy has no place in the case. The law is what governs the facts as you find them." (Trial Record at 482–483)

The fact that an issue is before the jury does not justify counsel's over-emphasis of an illegal and socially reprehensible activity in a manner calculated to arouse the prejudice of the jury in resolving the ultimate issue of the guilt or innocence of the defendant with respect to the murder and firearm charges. We think it likely that these remarks could have inflamed the passions of the jurors in a manner which impeded their ability to determine objectively the guilt or innocence of the defendant. *Commonwealth v. Collins*, 462 Pa. 495, 341 A.2d 492 (1975); *Commonwealth v.*

*Harvell,* 458 Pa. 406, 327 A.2d 27 (1974); *Commonwealth v. Revty,* 448 Pa. 512, 295 A.2d 300 (1972).

In response to this criticism of the prosecutor's remarks, the Commonwealth asserts that they were instigated by the intemperate closing argument of the defense attorney and were therefore justified as a retaliatory measure. See, *e. g., Commonwealth v. Stoltzfus,* 462 Pa. 43, 337 A.2d 873 (1975). We agree that defense counsel did himself exceed, in his own summation, the proper scope of effective advocacy, *see, e. g.,* ABA Standards Relating to the Defense Functions, §§ 7.8, 7.9, and we in no wise condone his conduct in so doing. But our review of the record convinces us that the remarks of the prosecutor exceeded that which was necessary to effective rebuttal. The prosecuting attorney must attempt to meet extravagant and emotional and even distorting arguments of defense counsel in a manner consistent with the responsibility of his position as a public prosecutor and an officer of the court.[4] That responsibility is "to seek justice not merely to convict." Code of Professional Responsibility EC 7–13, 438 Pa. lxxxviii. A defendant's right to a fair and impartial trial by jury may not be compromised by the semantic battles of counsel.

We adhere to our philosophy that the district attorney must have "reasonable latitude in fairly presenting a case to the jury, and that the trial judge must have reasonable discretion in deciding whether the bounds of propriety have been exceeded." *Commonwealth v. Cronin, supra,* 464 Pa. at 143, 346 A.2d at 62. See also *Commonwealth v. McNeal,* 456 Pa. 394, 319 A.2d 669 (1974); ABA Standards Relating to the Prosecution Function. Nevertheless, we cannot avoid the conclusion that the aggregate of

4. The assistant district attorney stated to the trial court that he would comment in his own argument with respect to any objections he had to the defense closing. We believe the more proper response would be to request the trial court to caution the defense attorney during the defense closing or to seek curative instructions immediately thereafter or in the court's charge. In addition, under appropriate circumstances, defense counsel's conduct may be the subject of contempt of court or disciplinary proceedings.

the remarks by the district attorney in the instant case was of such a nature as to deprive the appellant of a fair trial.[5] *Commonwealth v. Joyner, supra; Commonwealth v. Goosby,* 450 Pa. 609, 301 A.2d 673 (1973); *Commonwealth v. Simon,* 432 Pa. 386, 248 A.2d 289 (1968).

Judgments of sentence are vacated and appellant is granted a new trial.

---

**5.** We commend the trial court's efforts to cure the prejudicial impact of the prosecutor's summation by way of curative instructions. Such instructions are normally sufficient to remove the taint of improper argument and we encourage their use. In view of the nature and extent of improper summation in the case at bar, however, we cannot conclude that the instructions were adequate to assure appellant the fair and objective determination of his guilt or innocence to which he was constitutionally entitled.