**[J-106-2019]**
**IN THE SUPREME COURT OF PENNSYLVANIA**

| | | |
|---|---|---|
| OFFICE OF DISCIPLINARY COUNSEL, | : | No. 2624 Disciplinary Docket No. 3 |
| | : | |
| Petitioner | : | No. 166 DB 2017 |
| | : | |
| | : | Attorney Registration No. 71711 |
| v. | : | |
| | : | (Snyder County) |
| | : | |
| FRANK G. FINA, | : | ARGUED: November 20, 2019 |
| | : | |
| Respondent | : | |

**CONCURRING STATEMENT**

**JUSTICE WECHT**                      **DECIDED: FEBRUARY 19, 2020**

I join the Court's *per curiam* order suspending Frank Fina from the practice of law for one year and one day.

As Chief of Criminal Prosecutions in the Office of Attorney General ("OAG"), Fina led the investigation into child abuse allegations against Gerald A. Sandusky, a former assistant football coach at Pennsylvania State University. In December 2010, the OAG subpoenaed the testimony of two senior Penn State administrators, Timothy Curley and Gary Schultz. Later, the university president, Graham Spanier, was also subpoenaed to testify. When the three men testified, Cynthia Baldwin, who was general counsel for Penn State, appeared with each before the grand jury. In October 2012, Baldwin herself was subpoenaed to testify before the grand jury. Fina questioned Baldwin in front of that grand

jury.[1]  Fina's actions during that testimony led eventually to the disciplinary charge and sanction that we affirm by our *per curiam* order today.

The Disciplinary Board found that Fina violated Rule of Professional Conduct 3.10. That provision states:

> A public prosecutor or other governmental lawyer shall not, without prior judicial approval, subpoena an attorney to appear before a grand jury or other tribunal investigating criminal activity in circumstances where the prosecutor or other governmental lawyer seeks to compel the attorney/witness to provide evidence concerning a person who is or has been represented by the attorney/witness.
>
> EXPLANATORY COMMENT
> [1] It is intended that the required "prior judicial approval" will normally be withheld unless, after a hearing conducted with due regard for the need for appropriate secrecy, the court finds (1) the information sought is not protected from disclosure by Rule 1.6, the attorney-client privilege or the work product doctrine; (2) the evidence sought is relevant to the proceeding; (3) compliance with the subpoena would not be unreasonable or oppressive; (4) the purpose of the subpoena is not primarily to harass the attorney/witness or his or her client; and (5) there is no other feasible alternative to obtain the information sought.

Pa.R.P.C. 3.10 and Comment.  The Hearing Committee concluded that, because Fina's name was not listed on the subpoena issued to Baldwin, Fina had not committed the threshold act of subpoenaing an attorney.  Report and Recommendation of the Hearing Committee ("Committee Report"), 12/28/2018, at 16.  The Disciplinary Board, however, rejected the committee's interpretation of Rule 3.10.  Report and Recommendations of the Disciplinary Board ("Board Report"), 6/6/2019, at 23-25.  Instead, the Board stated that the reference to "a public prosecutor" in the Rule encompassed the OAG as the prosecuting body.  The Board reasoned:

---

[1]     A more complete account of the factual background of this case can be found at *ODC v. Baldwin*, 2587 DD3, slip op. at 4-15.

To interpret the rule otherwise would be to render it meaningless. A prosecutor who sought to avoid the "prior judicial approval" requirement of [Rule 3.10] simply could have another lawyer in the prosecutor's office issue the subpoena under that lawyer's name, then the prosecutor could omit the required hearing to obtain judicial approval of the attorney/witness's testimony, but somehow escape charges of misconduct under [Rule 3.10] because his or her name was not on the face of the subpoena.

*Id.* at 24-25.

Fina urges this Court to reject the Board's reasoning and adopt the Hearing Committee's position instead. *See, e.g.*, Brief for Respondent at 24. Today, we decline to do so. The Hearing Committee's interpretation of the Rule is untenable, as it would provide an easy opportunity for a prosecutor to avoid the consequences of Rule 3.10 by the simple artifice of asking another attorney in the office to issue the subpoena. The Board's rationale is straightforward and unavoidable.

Turning to the conduct that led to this disciplinary action, I emphasize that the prosecutor has a special and distinctive role in our system of justice. Unlike other lawyers, the prosecutor is more than a zealous advocate for a client. The prosecutor bears as well the high and non-delegable duty of ensuring a fair process for the defendant and of comporting himself or herself always in a manner consistent with a position of public trust. We had recent occasion to repeat these principles, as follows:

We have long understood that the prosecutor's role is threefold; she serves as an "officer of the court," as an "administrator of justice," and as an "advocate." *Commonwealth v. Starks*, 387 A.2d 829, 831 (Pa. 1978) (quoting CRIMINAL JUSTICE STANDARDS FOR THE PROSECUTION FUNCTION § 3-1.2(a) (Am. Bar Ass'n 1971)); *see Appeal of Nicely*, 18 A. 737, 738 (Pa. 1889) (describing a prosecutor as an officer of the court who is responsible for seeking "equal and impartial justice" on behalf of the Commonwealth).

As an officer of the court, the prosecutor has the responsibility to serve the public interest and to "seek justice within the bounds of the law, not merely to convict." *Starks*, 387 A.2d at 831. Because it is her duty both to respect the rights of the defendant and to enforce the interests of the public, the prosecutor "is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer." *Berger v. United States*, 295 U.S. 78, 88 (1935). . . .

As an "administrator of justice," the prosecutor has the power to decide whether to initiate formal criminal proceedings, to select those criminal charges which will be filed against the accused, to negotiate plea bargains, to withdraw charges where appropriate, and, ultimately, to prosecute or dismiss charges at trial. . . . The extent of the powers enjoyed by the prosecutor was discussed most eloquently by United States Attorney General (and later Supreme Court Justice) Robert H. Jackson. In his historic address to the nation's United States Attorneys, gathered in 1940 at the Department of Justice in Washington, D.C., Jackson observed that "[t]he prosecutor has more control over life, liberty, and reputation than any other person in America. His discretion is tremendous." Robert H. Jackson, *The Federal Prosecutor*, 31 AM. INST. CRIM. L. & CRIMINOLOGY 3 (1940).

*Commonwealth v. Clancy*, 192 A.3d 44, 52-53 (Pa. 2018) (footnotes omitted, citations modified).

The prosecutor's obligation to shoulder these responsibilities with conscientiousness and fidelity is especially acute in the grand jury setting, where the one-sided nature of the proceeding gives the Commonwealth a unique advantage. We recently observed:

The need for safeguards on the grand jury is enhanced by the fact that it is not bound by the rules of evidence that normally protect the publicly accused from baseless or unduly prejudicial information. The grand jury can hear any rumor, tip, hearsay, or innuendo it wishes, in secret, with no opportunity for cross-examination. The grand jury is not required to hear or consider evidence which would exonerate a target of an investigation, and the fairness of its methods is unreviewable.

*In re Fortieth Statewide Investigating Grand Jury*, 190 A.3d 560, 569 (Pa. 2018) (citing *In re Grand Jury Proceedings, Special Grand Jury 89-2,* 813 F.Supp. 1451, 1463 (D. Colo. 1993)) (citations omitted).

Mindful of these important principles and realities, this Court adopted Rule 3.10, which cabins the otherwise largely unfettered power of the prosecutor in a grand jury. As evidenced by this Court's Rule of Professional Conduct 1.6 (Confidentiality of Information) and the General Assembly's enactments of 42 Pa.C.S. §§ 5928 (confidential communication to an attorney in civil matters) and 5916 (confidential communication to

an attorney in criminal matters), the law of this Commonwealth enshrines and evinces a strong policy disfavoring the disclosure by attorneys of information received from their clients. Hence, Rule 3.10 requires prior judicial approval before an attorney can be summoned to appear before a grand jury and to provide testimony there concerning a client.[2] The rule provides an important check against the prosecutor's power to haul an attorney before a grand jury and force that attorney to testify against a client and disclose potentially confidential information. That check is a neutral judge, whose prior approval the prosecutor must seek and obtain. And such approval is not granted until the judge has first considered whether the testimony would violate confidentiality, whether it is relevant, whether the subpoena is unreasonable or oppressive, whether the intent of the subpoena is to harass the attorney or client, and whether there are alternative means to obtain the information sought. *See* Pa.R.P.C. 3.10, Cmt.

Fina's conduct denied a neutral judge the opportunity to perform this vital check on prosecutorial power. Fina specifically told the supervising judge that he would not question Baldwin in any way that would invade attorney-client privilege. *See* N.T., 10/22/2012, at 10-11 ("What I would suggest is that we need not address the privilege issue this week before her testimony, that we are not going to ask questions about . . . Mr. Schultz, Mr. Curley, their testimony before the grand jury, and any preparation for or follow-up they had with Counsel Baldwin."). Fina made those representations despite knowing that successor counsel for Curley and Schultz maintained that there was an attorney-client relationship between their clients and Baldwin and that they were not waiving any privilege. *See* ODC Exhibits 6 & 7. Fina made those representations despite knowing that Penn State, while waiving its own attorney-client privilege, disclaimed any

---

[2]     While Fina has maintained that Baldwin did not represent any of the three administrators about whom she provided grand jury testimony, we answered the question of representation to the contrary in *ODC v. Baldwin*, 2587 DD3, slip op. at 23-31.

waiver of privilege that the administrators might have. *See* ODC Exhibit 8 ("We have waived the University's privilege . . . with two critical exceptions: . . . (2) any communications between . . . Baldwin and Messrs. Schultz and Curley. . . ."); N.T., 10/22/2012, at 6 ("[I]ssues have legitimately arisen with regard to the substance and perception of the representation by . . . Baldwin of Mr. Schultz and Curley that have us believing that the most prudent course is for the Court to make an ultimate determination as to whether that aspect of the privilege should be waived."). Fina made those representations despite knowing that the supervising judge was inclined to notify counsel for Curley and Schultz that they should submit a motion to have their privilege claims adjudicated. *See* N.T., 10/22/2012, at 12 (supervising judge discussing his intent to send a letter to the attorneys asserting privilege to acknowledge receipt of their assertions and indicating "that if there was a motion to be filed then I would be addressing it"). Both the Hearing Committee and the Disciplinary Board found that those representations by Fina were, in fact, misrepresentations. *See* Committee Report at 12 ¶ 44 ("These questions were contrary to the representations [Fina] made to [the supervising judge]."); Board Report at 25 ("[Fina] misled the Court as to his ultimate intentions."); *id.* at 29 ("[Fina's] misrepresentations to [the supervising judge] as to the scope of his inquiry of Ms. Baldwin's testimony are deeply disturbing . . . .").[3]

Absent Fina's misrepresentations, the supervising judge could have (and presumably would have) held a hearing to adjudicate the privilege claims.[4] Had the judge

---

[3] This Court also has noted that questions posed by Fina led Baldwin to "reveal[] the contents of numerous communications between herself and Curley, Schultz and Spanier." *ODC v. Baldwin*, 2587 DD3, slip op. at 14; *see also id.* at 65 ("Fina's questioning of [Baldwin] focused almost exclusively on implicating Curley, Schultz and Spanier for their efforts to avoid the disclosure of incriminating documents . . . .").

[4] A safer course for a supervising judge in this position would have been to resolve the privilege claims regardless of the representations of the prosecutor.

found that privilege applied, Baldwin would not have been permitted to testify, eliminating the issues that arose later, issues that caused criminal charges to be quashed.[5]  Instead, had the judge found that no privilege existed, the issue could have been subject to an interlocutory appeal.  With the privilege concerns conclusively litigated, any permitted testimony and resulting indictments would have been insulated from reversal on this basis.  This unfortunate circumstance demonstrates that adherence to Rule 3.10 protects not just the attorney-client relationship, but the prosecution as well.

Fina failed to comply with Rule 3.10.  The supervising judge, therefore, lacked the information necessary to provide prior approval for Baldwin's testimony.  After Baldwin testified, the grand jury indicted Spanier and issued additional indictments against Curley and Schultz.  To state it plain, instead of Baldwin serving as a shield for her former clients, her testimony was elicited and used by Fina as a sword against them, to devastating effect.  This subversion of the attorney-client privilege is precisely what Rule 3.10 is designed to prevent.

On this appeal, Fina has chosen now to offer us several arguments as to why, to his mind, it was permissible for him to call Baldwin to testify concerning the Penn State administrators.   These claims include arguments that there was no privilege, or that the crime-fraud exception to confidentiality applied, or that any applicable privilege had been waived.  But Fina's arguments before us are not only unavailing on their merits; that he ventures them now serves in and of itself to remind us why his conduct was so problematic in the first instance: issues regarding privilege should have been raised and litigated before Baldwin testified.  This is why Rule 3.10 exists.  Instead, Fina chose to mislead the supervising judge, causing that jurist to believe such resolution was

---

[5]     *See Commonwealth v. Schultz*, 133 A.3d 294, 325-28 (Pa. Super. 2016); *Commonwealth v. Spanier*, 132 A.3d 481, 498 (Pa. Super. 2016); *Commonwealth v. Curley*, 131 A.3d 994, 1007 (Pa. Super. 2016).

unnecessary because Fina undertook to refrain from inquiry into areas of potential privilege.  Fina promptly reneged on those assurances.  This conduct fell far below the ethical standard we rightly demand of a prosecutor in this type of situation.

Fina violated Rule 3.10.  Suspension for a year and a day is manifestly appropriate.

Justice Donohue joins this concurring statement.