**[J-40-2023] [MO: Dougherty, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 31 EAP 2022 |
| | : | |
| Appellant | : | Appeal from the Judgment of |
| | : | Superior Court entered on January |
| | : | 3, 2022 at No. 1981 EDA 2020, |
| v. | : | affirming the Order entered |
| | : | September 16, 2020 in the Court of |
| | : | Common Pleas, Philadelphia |
| RONALD HARRIS, | : | County, Criminal Division at No. CP- |
| | : | 51-CR-0005166-2019. |
| Appellee | : | |
| | : | ARGUED: September 12, 2023 |

**CONCURRING OPINION**

**JUSTICE WECHT**                                                          **DECIDED: May 13, 2024**

Once again, we must address the use of hearsay at preliminary hearings.[1] Make no mistake: this recurring problem is one of this Court's own making. Prior to 2013, Pennsylvania courts adhered to a straightforward rule: the use of hearsay at preliminary hearings was limited to establishing elements of criminal offenses that involved "proof of the ownership of, non-permitted use of, damage to, or value of property."[2] This rule was not broken. It required no fixing. For unexplained reasons, and despite the lack of any indication that this rule was interfering with the fair and reliable operation of preliminary hearings, this Court decided to experiment. And that's where the trouble began.

---

[1] This is at least our fourth attempt to make sense of the problems that this Court created by allowing the Commonwealth to use inherently untrustworthy and unreliable evidence to establish a *prima facie* case. *See Commonwealth ex rel. Buchanan v. Verbonitz*, 581 A.2d 172 (Pa. 1990) (plurality); *Commonwealth v. Ricker*, 170 A.3d 494 (Pa. 2017) (*per curiam*) (dismissed as improvidently granted); *Commonwealth v. McClelland*, 233 A.3d 717 (Pa. 2020). Unfortunately, this likely will not be our last attempt.

[2] Pa.R.Crim.P. 542(E) (effective 2/28/2011-6/1/2013).

In 2013, this Court committed an unforced error: whereas the settled rule had allowed the Commonwealth to use hearsay only to prove issues related to the ownership and value of property, a new rule issued, allowing the Commonwealth to use hearsay to prove "any" element of a crime.[3] This has been a failed experiment. As written, the new rule initially was construed to allow the Commonwealth to use hearsay to prove not just "any" element, but every element. In *McClelland*, which followed an impasse in *Ricker*,[4] a majority of this Court agreed that such an interpretation violates due process.[5] But a problem remained in *McClelland*'s wake: if the Commonwealth cannot use hearsay to establish the entirety of a *prima facie* case, how much hearsay can it use? That is the unstated (and, alas, unresolved) question at the heart of this case. Today's Majority offers a reasonable interpretation of Rule 542. But the question of "how much is too much" remains. Today's ruling makes clear that the Commonwealth cannot prove identity exclusively with hearsay. But this Court still has not announced how much hearsay can be used to prove "any" of the other elements of a crime.

The time has come to end the failed experiment that this Court initiated in 2013. More than ten years of experience with Rule 542(E) has generated a tremendous amount of litigation, with no end in sight. Throughout it all, no reason has emerged to suggest that the use of hearsay has improved the functioning of, or the interests served by, preliminary hearings. In fact, quite the opposite. I join today's Majority because it correctly interprets the language that currently appears in Rule 542. However, it is time for this Court to stop trying to make sense of our own ill-conceived Rule. We should

---

[3]     Pa.R.Crim.P. 540(E) (current version).

[4]     In *Ricker*, this Court tried, but failed, to resolve the issue of whether a *prima facie* case built entirely upon hearsay violates due process. We revisited the issue in *McClelland*.

[5]     *See McClelland*, 233 A.3d at 736.

rewrite the Rule, and end this futile quest of trying to guess the point at which a legal burden can be satisfied with incompetent and otherwise inadmissible evidence.

Hearsay evidence—an out of court statement that is offered for the truth of the matter asserted[6]—is "incompetent to establish any *specific* fact,"[7] and is "in its own nature inadmissible."[8] "Its intrinsic weakness, its incompetency to satisfy the mind of the existence of the fact, and the frauds which might be practiced under its cover, combine to support the rule that hearsay evidence is totally inadmissible."[9] Naturally, then, the question of how much hearsay should be used at a hearing that implicates a criminal defendant's liberty interests should be easy to answer. How much inadmissible evidence should be admissible? The answer is none.

Over the years, as this Court has considered cases on this topic, the Commonwealth has not offered a proper justification for lowering the evidentiary bar in this manner for preliminary hearings. The Commonwealth has noted that neither the United States Constitution nor the Pennsylvania Constitution requires a preliminary hearing. That is true enough. But then the Commonwealth asserts that, having provided for such a hearing, the law does not also provide that the hearing includes the full panoply of constitutional rights.[10] That our Constitutions do not require a particular hearing does not mean that the hearing, once provided, may be treated as an empty formality. In the law, the truth matters. Those that find themselves involved in the criminal justice system

---

[6]     *See* Pa.R.E. 801(c)(1)-(2).

[7]     *Queen v. Hepburn*, 11 U.S. 290, 295 (1813) (emphasis in original).

[8]     *Id.*

[9]     *Id.* at 296.

[10]    *See, e.g.*, Commonwealth's Br. at 29-34.

are entitled to assurance that the system is fair, that the adjudications are reliable, and that jurists make decisions based upon competent, reliable evidence.

The Commonwealth has expressed concern that, if hearsay is prohibited *in toto* at preliminary hearings, those hearings will devolve into mini-trials.[11] Before 2013, hearsay was largely excluded from use at preliminary hearings. There is no evidence to suggest that the criminal justice system was bogged down, or that preliminary hearings had become mini-trials encumbered by numerous witnesses, credibility issues, and constant evidentiary disputes. There is no reason to believe that, if we return the Rule to its pre-2013 status, mini-trials would become the norm or the court system would grind to a halt. Indeed, history and experience suggest the opposite. There is no reason to doubt that the vast majority of preliminary hearings are proceeding today as they always have, with live witnesses and competent evidence. Both before 2013 and since 2013, preliminary hearings have maintained viability without the need for hearsay, and no evidence suggests a restriction on hearsay would transform such hearings into mini-trials.

Nor is there any reason to believe that the insistence upon competent evidence would lead to material alterations in how preliminary hearings are conducted. The Commonwealth must meet only a *prima facie* standard, the lowest burden in our criminal law. This requires only a bare minimum showing: that "an offense has been committed" and that "the defendant has committed it."[12] This burden is far removed from the trial standard of proof beyond a reasonable doubt. Furthermore, credibility of witnesses is not a consideration at a preliminary hearing. The Commonwealth is not required to establish, through its questioning or through separate corroborating evidence, the credibility of its witnesses. Hence, by its very nature, a preliminary hearing cannot become a mini-trial.

---

[11] *See id.* at 32.

[12] Pa.R.Crim.P. 542(D).

Limiting (or prohibiting) the use of hearsay will not somehow change that hearing's fundamental character.

The use of hearsay at preliminary hearings does not merely fail to serve any valid interests. As I explained in *McClelland*, its use actually disserves the interests of "each of the three principal players" at such hearings: (1) the magisterial district judge; (2) the prosecutor; and (3) the charged defendant.[13]

> The magisterial district judge presides over the preliminary hearing and is responsible for a number of decisions critical to the progression of the criminal justice process in each individual case. The judge must listen to the evidence and decide whether the defendant should "be discharged," Pa.R.Crim.P. 542(A)(2), or whether the Commonwealth has established a *prima facie* case such that the defendant should be "bound over to court according to law," *id.* The magisterial district judge's decision to bind a case for trial is an authorization to the Commonwealth to continue to detain the defendant—either physically in jail or by compelling the defendant to appear for hearings and to stand for trial. The jurist presides over the hearing in order to "prevent a person from being imprisoned or required to enter bail for a crime which was never committed, or for a crime with which there is no evidence of his connection." *Commonwealth ex rel. Maisenhelder v. Rundle*, 198 A.2d 565, 567 (Pa. 1964).
>
> The evidentiary presentation, and the decision flowing from it, is a preview of what would be presented at an actual trial and is meant to convince the magisterial district judge that there is at least some evidence for all elements of the charged offenses, and that the charges and detention accordingly are warranted. The actual presentation informs the magisterial district judge's decision as to whether to hold all of the charges for trial, dismiss all of the charges, or dismiss some and hold others. The Commonwealth's evidence illuminates for the magisterial district judge the nature and severity of the crimes charged, the facts and circumstances underlying the arrest and the charges, and the role that the defendant played in the crimes. This body of information is material not just to the *prima facie* determination, but it also provides a foundation to modify, reduce, or increase the defendant's bail.
>
> The use of inadmissible hearsay undermines each of these decisions. The more hearsay is relied upon at a preliminary hearing, the less "confidence can be ascribed to that decision. "In principle, the justification for the Commonwealth's charges would be no different than if the prosecutor had looked up to the judicial officer and said 'trust me, we can prove this case later.'" *Ricker*, 170 A.3d at 519 (Wecht, J., dissenting). This is true when

---

[13] *McClelland*, 233 A.3d at 739 (Wecht, J., concurring).

the Commonwealth relies upon any amount of hearsay to establish the material aspects of its *prima facie* case.

Evidence that the law deems unreliable *per se* naturally engenders unreliable results. Not only is the *prima facie* determination questionable when based upon hearsay; so, too, would be any collateral decisions that are made based upon such information, decisions such as bail modifications or issuances of "no contact" or "stay away" orders. Simply put, reliance upon hearsay undermines each and every aspect of the magisterial district judge's role at this "critical stage."

For the Commonwealth, the preliminary hearing often is the prosecutor's entry point into the process, and provides the prosecutor with the first substantive view of the evidence that police uncovered before charging the defendant. The hearing affords the Commonwealth an opportunity to speak to its witnesses for the first time before a neutral fact-finder, to present live testimony to enable evaluation of the strengths and weaknesses of the case, to add or withdraw charges as necessary, and to set the case on course for a trial on charges that are warranted by the facts. The Commonwealth can make its own initial credibility assessments, direct additional investigation or scientific testing of evidence, and contemplate future plea offers, all based upon the preview of the case that a reliable preliminary hearing provides.

Having such a solid understanding of the strengths and weaknesses of a case promotes efficiency in the process by prompting the Commonwealth to utilize its resources to prosecute only the charges that are reasonably capable of being proven at trial. Knowing from the outset that a case would be difficult or impossible to prove, or that a case does not warrant the severity of the charges being pursued by the police initially, the prosecution may tailor the allocation of its resources prudently, perhaps by seeking to reach a plea agreement with the defendant, which, in turn, provides the corollary benefit (among others) of minimizing the amount of exposure the victim of crime has to the court system.

The Commonwealth can achieve none of this if the case relies upon the weak and unreliable foundation that hearsay lays. Hearsay can taint not only the initial perception of the strength of a case, but reliance upon the same might influence future prosecutorial decisions and arguments, heightening the possibility that a defendant could remain incarcerated longer than is necessary or justified, or that a victim will be forced to testify in cases that should have settled with plea bargains.

It neither diminishes nor harms any legitimate prosecutorial purpose to require the Commonwealth to meet its evidentiary burden with actual, admissible evidence. There is a valid concern that requiring live testimony to establish material elements of a *prima facie* case would increase victims' exposure to the criminal justice process. I do not discount this argument, nor do I in any way downplay the trauma that crime and the obligations

attendant to a prosecution of that crime have on victims. But the Commonwealth's role is more than just advocating for one victim, or even for victims generally. The Commonwealth's greater obligation is to represent the people as a whole, and to stand for the interests of the state in prosecuting crimes. A prosecutor's job is "not merely to convict." *Commonwealth v. Clancy*, 192 A.3d 44, 52 (Pa. 2018) (quoting *Commonwealth v. Starks*, 387 A.2d 829, 831 (Pa. 1978)). The prosecutor is an "officer of the court," an "administrator of justice," and an "advocate." *Id.* In wearing each of these three hats, the prosecutor's devotion is to the law, and the prosecutor simultaneously must "enforce the interests of the public" and "respect the rights of the defendant." *Id.*

At all times, "[t]he prosecutor must ensure that 'the defendant is accorded procedural justice and that [adjudications are] decided upon the basis of sufficient evidence.'" *Id.* at 52-53 (citing Pa.R.P.C. 3.8 cmt. 1; and MODEL RULES OF PROF'L CONDUCT 3.8 cmt. 1 (AM. BAR ASS'N 2015)) (brackets omitted). Adjudications predicated upon inadmissible evidence satisfy neither of these prosecutorial responsibilities. It does not matter that the evidentiary threshold is low, or that the preliminary hearing is not intended to be a full criminal trial. It is a proceeding that affects the substantive rights of an accused and implicates significant societal interests, and, once afforded as a matter of law, it cannot be cast aside as a mere formality. Hearsay is not sufficient evidence. Hearings based upon insufficient evidence fail to afford procedural justice. Prosecutors are duty-bound to satisfy lofty responsibilities. Allowing those ministers of justice to circumvent burdens using inadmissible evidence serves none of those responsibilities.

For the defendant, the preliminary hearing is a crucial proceeding. As I explained in *Ricker*:

> The preliminary hearing was not created for the purpose of serving as a trial preparation tool for the defense. This does not mean that no benefits necessarily and naturally accrue to the defendant in conducting the hearing according to its true purpose and within the confines of our Constitutions. A true preliminary hearing involves introduction by the Commonwealth of the minimum competent evidence to establish a *prima facie* case. In doing so, the Commonwealth opens its case to preliminary inspection and subjects its witnesses to basic cross-examination. Each is necessary to convince the presiding judicial officer that the Commonwealth's restraint upon the accused's liberty is warranted. . . . [T]his allows the accused and his counsel to probe the testimony, to make arguments against the charges or in favor of bail, and to preserve favorable testimony. It also serves as a limited discovery tool, which can inform decisions on whether to challenge the seizure of the accused or the

acquisition of evidence in a suppression motion, and on what defense to pursue, if any. Moreover, the ability to participate fully in a preliminary hearing can aid in focusing subsequent expenditures of limited investigative resources, something that is particularly beneficial to chronically (and unlawfully) underfunded public defender's offices. *See Kuren v. Luzerne Cty.*, 146 A.3d 715, 717 (Pa. 2016).

*Ricker*, 170 A.3d at 518 (some citations omitted).

Reliance upon hearsay to establish any of the material elements of a preliminary hearing would render "the right to counsel and the rule-based right to cross-examine witnesses . . . nothing more than hollow formalities, promises broken." *Id.* at 519.

There would be no ability to test the Commonwealth's *prima facie* case, no witnesses to cross-examine, no testimony to preserve. Counsel would not be able to identify weaknesses in the Commonwealth's case or to identify possible defenses, as counsel would have no reason to be confident that the [hearsay] accurately or fully reflect[s] what the witness would say on the witness stand at trial. The right to counsel, and [the] concomitant rule-based right to cross-examine witnesses, would shrink to a right merely to have a warm body stand next to the accused, incapable of serving any real function on the accused's behalf.

Additionally, the accused would be deprived of the other benefits that flow from participating in a preliminary hearing, such as obtaining a fair idea of the case against him or her and being able to allocate resources accordingly. At the same time, the Commonwealth would benefit from shielding its case and its witnesses from testing and examination, and would be permitted to proceed on little more than its assurance that it will produce competent evidence at some later date.

*Id.*[14]

Neither the Commonwealth's arguments, nor this Court's precedents, justifies disregarding these compelling interests for the sake of convenience. Even the use of some hearsay evidence demeans and diminishes these interests. Perhaps in the next case—and because today's case again leaves open the question of how much hearsay

---

[14]     *McClelland*, 233 A.3d at 739-42 (Wecht, J., concurring).

is allowed under the Rule, there will be a next case—this Court will realize as much, and will bring an end to this fruitless endeavor.

In other non-trial contexts, we do not permit the use of hearsay as a method of proving a fact. For instance, in mental illness adjudications—which, like preliminary hearings are not full trials but implicate important liberty interests and afford the right to counsel—we elevate the rights and interests of the parties over the convenience of using hearsay. In *In re Hutchinson*, we held as follows:

> Furthermore, appellant's right to confront and cross-examine witnesses necessarily implies that hearsay evidence is inadmissible. 50 P.S. § 7304(e)(3). Finally, considering the grave consequences of an adjudication of mental illness under § 304, it is imperative that the commitment court strictly comply with the rules of evidence generally applicable to other proceedings which may result in an extended deprivation of an individual's liberty. The Commonwealth's burden to present admissible evidence at the commitment hearings is small compared to the individual's interest in not being deprived of liberty on the basis of inherently unreliable evidence.[15]

We should treat preliminary hearings the same way. As in mental health proceedings, the burden of using competent evidence pales in comparison to the rights and interests at stake.

There is another reason that we should go back to the proverbial drawing board with this Rule. The Majority's interpretation of the specific text used in the Rule, although correct, is detached from the way in which practitioners and judges understand criminal offenses. First, and foremost, there is no compelling or even logical reason to treat identity as a superior aspect of a *prima facie* case, such that it cannot be proven by hearsay, while the other elements of the offense can be proven by hearsay. Second, while the language of the rule might support treating identity and statutory elements as

---

[15] *In re Hutchinson*, 454 A.2d 1008, 1011 n.8 (Pa. 1982) (citing *Commonwealth ex rel. Finken v. Roop*, 339 A.2d 764, 773-74 (Pa. Super. 1975)).

separate for purposes of the use of hearsay, this distinction does not comport with how practitioners and magisterial judges treat these components in practice. To the contrary, these elements are treated as parts of the whole. Ask any defense attorney or prosecutor and they will tell you: identity is an implicit element of every crime, and it necessarily garners the same treatment as any other element. The terms of the rule notwithstanding, there is no reason to treat identity differently from the statutory elements of the crime. Yet, oddly, the current Rule does so.

Fortunately, Rule 542 is not a legislative enactment. We are not bound to live with it. It is a procedural rule, written and adopted by this Court. We can change it at will, and we should do so post-haste. The Rule has done enough damage, both in the amount of resources that this Court has expended trying to make heads or tails of it and in allowing the Commonwealth to satisfy its burden with untrustworthy evidence. Left to my own devices, and for the reasons stated herein and in my opinions in *Ricker* and *McClelland*, I would do away with any allowance for the use of hearsay at preliminary hearings. Inadmissible evidence should be inadmissible.

However, in the event that this Court is not inclined to banish hearsay entirely from preliminary hearings, I remain[16] mindful of the fact that some types of hearsay historically have been permitted in order to facilitate the swift and efficient conduct of preliminary hearings. Some evidence, such as scientific or forensic lab reports, takes a long time to produce, is more readily provable than witness-based hearsay, and is less likely to be unavailable later at trial. Deferring preliminary hearings for the production of such evidence might unreasonably delay those hearings, jeopardize the Commonwealth's ability to comply with its speedy trial obligations, and unnecessarily lengthen defendants'

---

[16]     *See McClelland*, 233 A.3d at 742 (Wecht, J., concurring).

pre-trial incarceration.  Thus, I propose that we replace the current version of Rule 542(E) with the following modified version of the pre-2013 rule:

> (E) Hearsay as provided by law shall not be considered by the issuing authority in determining whether a *prima facie* case has been established, except to establish the value of real or personal property for grading purposes, to present scientific, technical, or forensic information, or to introduce laboratory reports.

Regardless of the path that we take from here, it has become unavoidably clear that change should occur, and soon.  That said, as I am bound to interpret the rule as currently written, I join the Majority Opinion.