470 A.2d 91

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Johnny SCOTT, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 27, 1983.

Decided Dec. 30, 1983.

John W. Packel, Chief, Appeals Div., Asst. Public Defender, Karl Baker, Philadelphia, for appellant.

Robert B. Lawler, Chief, Appeals Div., Gaele McLaughlin, Barthold, Asst. Dist. Attys., for appellee.

Before ROBERTS, C.J., and NIX, LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON and ZAPPALA, JJ.

## OPINION

McDERMOTT, Justice.

Following a non-jury trial appellant was convicted of aggravated assault, recklessly endangering another person, a weapons offense and conspiracy. After post-verdict motions were filed and argued, the trial court granted a new

trial on the grounds of after-discovered evidence. On appeal by the Commonwealth a Superior Court panel (Opinion, Watkins, J., joined by Brosky and Montgomery, JJ.) reversed and reinstated the original verdicts. *Commonwealth v. Scott*, 284 Pa.Super. 440, 426 A.2d 128 (1981). This appeal followed. The pertinent factual and procedural history is as follows:

At trial the Commonwealth's evidence established that on October 22, 1978, Michael Edwards, James Smith and James Browne were the victims of an unprovoked gun attack while they sat in their car. The trio had been followed to their car by four males who gathered around the car and prevented them from driving away. According to the Commonwealth's evidence, appellant struck a handgun inside the car and fired at Browne, while another one of the attackers, Kevin Hill, fired a shotgun blast through the car's front window. When the barrage of gunfire had ceased, a bullet had been lodged in Edward's thigh.

During his trial appellant was identified as one of the assailants by Edwards and Browne.[1] Both victims testified that at the time of the attack, appellant was clothed in a dark cap and a brownish red waist length jacket. An hour after the attack, appellant had been apprehended by the police in the vicinity of the scene, clad in identical clothing.

Another Commonwealth witness, James Lark, testified that after the shooting appellant, who was dressed in the above described clothing, approached him and said: "My name is Johnny Scott and I killed someone" and "I'm the one that shot your homies [friends]." On this evidence appellant was subsequently found guilty of the above enumerated charges.

In post-trial motions appellant alleged the existence of after-discovered evidence. The unsworn post-verdict motion alleged that appellant's counsel, Patricia Pierce, was informed by a Mr. Franklin Green, counsel for co-indictee, Kenneth Hill, that his client told him that he could exoner-

---

1. The third victim, James Smith, did not testify at the trial.

ate appellant. The motion acknowledged, however, that Hill had previously given contrary sworn testimony at his own trial denying any involvement in the shooting.

An evidentiary hearing was held on July 18, 1979. At the hearing, appellant called Mr. Green in an attempt to elicit from him his client's statement. Invoking the attorney-client privilege, Green refused to testify. The hearing judge suggested to the prosecutor that Hill be offered immunity from prosecution for perjury so he could testify on behalf of appellant. Alternatively, appellant's counsel argued that the attorney-client privilege between Green and Hill had been waived by the former when he disclosed Hill's statement to appellant's counsel. The trial court disagreed. When the Commonwealth refused to grant immunity, the trial court found that although it did not have the power to grant judicial immunity to Hill, a new trial was warranted based on the contents of the unsworn post-trial motion, notwithstanding its double hearsay nature, since the judge considered it to be reliable and credible.

In reversing the order of a new trial and reinstating the verdicts, the Superior Court found that since the proposed statement was unavailable at the post-trial hearing, there was no admissible after-discovered evidence. It further reasoned that even if the alleged after-discovered evidence was produced it would have been perjurious, and therefore improper upon which to base a new trial.

Initially, appellant contends that the Superior Court erred in its conclusion. He complains that his co-indictee's statement was of such a nature that if he was granted a new trial a different verdict would be likely. The trial court agreed and granted appellant a new trial for that reason.

■ It is well settled in this Commonwealth that a new trial is not warranted on the basis of after-discovered evidence, unless it could not have been discovered until after the trial despite reasonable diligence, is not used for merely cumulative or impeachment purposes, and is of such a nature that it would compel a different outcome. *Com-*

*monwealth v. Hugney,* 491 Pa. 222, 420 A.2d 422 (1980);
*Commonwealth v. Cooney,* 444 Pa. 416, 282 A.2d 29 (1971);
*Commonwealth v. Green,* 358 Pa. 192, 56 A.2d 95 (1948).

Here, the record is barren of any proof that Hill's statement was producible or admissible. At the post-trial hearing, Mr. Green, attorney for Hill, was called by appellant's counsel for the sole purpose of repeating to the court his client's prior inconsistent out-of-court statement, which had been made in the confines of their attorney-client relationship. Declining to endanger his client's rights Mr. Green invoked the attorney-client privilege and refused to testify. In response to the trial court's questions, Mr. Green advised the trial judge that if Hill were called to testify for appellant he would be jeopardizing his right against self-incrimination by opening himself up to a charge of perjury based upon his sworn trial testimony, and if so, would invoke his Fifth Amendment right. Over appellant's counsel's objections, the trial court ruled that Mr. Green's privilege claim was proper and that he could not be questioned further concerning his client's statement. Because Hill intended to assert his right against self-incrimination, he was never subpoenaed to testify at the hearing. Appellant, however, presented no evidence that, even if Hill was called as a witness, he would have testified favorably for him.

Nevertheless, Judge Lois Forer found that the statement by appellant's counsel of what Mr. Green had told her of what his client told him, although double hearsay, was reliable, trustworthy and legitimate testimonial evidence; and that *"if* Mr. Green had testified" ... she *"would have* granted a new trial,"* (Slip op. Forer, J. at 4.).

The judge justified the admissibility of the hearsay statement by finding that Hill's statement was against his penal interest, thereby qualifying as an exception to the hearsay rule. The court then found that because Mr. Green was Hill's attorney his post-trial hearing testimony of what his client told him was unquestionably reliable, and that appellant's counsel's statement of what Mr. Green told her also

had the same reliability attributes as Mr. Green's hearsay statement.

■ This Court has previously warned that post-verdict accomplice testimony should be considered with caution. *Commonwealth v. Gaddy*, 492 Pa. 434, 424 A.2d 1268 (1981); *Commonwealth v. Coleman*, 438 Pa. 373, 264 A.2d 649 (1970). Although the trial court did not actually hear testimony from co-indictee Hill, the post-trial motion statement exonerating appellant was clearly untrustworthy and unreliable, bordering on charade. During his own trial, Hill disclaimed any complicity in the assault.[2] Then following appellant's trial, appellant's attorney discovered another statement made by Hill in which he simultaneously confessed to the shooting and exonerated appellant. These two polarized statements were totally inconsistent and contradictory. Both of them could not be true. To say that the second statement was more reliable and credible than the first would be pure speculation, especially when the first one was given under oath while the second was not.

■ Moreover, appellant's attorney's statement was twice removed from its source without any exceptions to the hearsay rule to qualify it as admissible. Appellant's counsel was attempting to gain a new trial based on a statement which had been relayed to her by another attorney, which in turn had been told to him by his client. When dissecting a double hearsay statement, the reliability and trustworthiness of each declarant must be independently established. Appellant has offered no theory as to how his counsel's statement would qualify as an exception to the hearsay rule, nor do we see one.

■ Appellant further argues that the statement of Mr. Green would be admissible at a subsequent trial because the attorney-client privilege had been waived by Mr. Green when he repeated the statement of his client to appellant's

2. Hill was also convicted in relation to the assaults and was awaiting a decision on his appeal at the time he allegedly made the exculpatory statement.

attorney. Appellant misconstrues the applicable statute and controlling precedent. Under 42 Pa.C.S.A. § 5916, the right to waive the attorney-client privilege belongs to the client.[3] Only in the limited situation when the client's rights or interest can not be possibly affected adversely, can his attorney waive it. *Kramer v. Kister*, 187 Pa. 227, 40 A. 1008 (1898); *Hamilton v. Neel*, 7 Watts 517 (1838). *See* 8 J. Wigmore, Evidence § 2292 (McNaughton rev. 1961); Code of Professional Responsibility, Canon 4, DR 4-101.

■ Mr. Green's own testimony revealed that if he repeated his client's statement he would be acting against his client's interest and would subject him to a charge of perjury. Since the only interest that would be served would be that of appellant's and not Mr. Green's client, Mr. Green was not in a position to waive his client's privilege.

Thus, appellant has failed to show how this alleged exculpatory statement would be producible or admissible at his trial. In cases involving after-discovered evidence, in addition to meeting the requirements set forth in *Hugney, supra*, the proposed evidence must also be both producible and admissible. Since there was no showing as to how the proposed statement would fit both categories, the Superior Court was correct when it held that the alleged statement was non-existent evidence.

■ Appellant also claims that co-indictee Hill should have been immunized so that he might offer the alleged exonerating testimony. The difficulty with this argument is that such testimony would have been perjurious. Whatever the policy reasons, they are inapplicable here. Hill's testimony would be in direct contradiction of his previous

3. Act of July 9, 1976, P.L. 586, No. 142, § 2, a substantial reenactment of the Act of May 23, 1887, P.L. 158, No. 89, § 2(d), 19 P.S. § 686, *as amended*, 42 Pa.C.S.A. § 5916. That statute states:

*Confidential communications to attorney*

In a criminal proceeding counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same unless in either case this privilege is waived upon the trial *by the client.* (Emphasis added.)

sworn testimony; and hence, perjurious and within the prohibition of *Glickstein v. United States*, 222 U.S. 139, 32 S.Ct. 71, 56 L.Ed. 128 (1911) and our own statutory scheme for witness immunization. See 42 Pa.C.S.A. § 5947.

Therefore, we hold that appellant had no right to the immunization of his co-indictee, and since the alleged after-discovered evidence was not admissible in the form offered, it was error for the trial court to award a new trial.

The judgment of the Superior Court is hereby affirmed.

ROBERTS, C.J., files a dissenting opinion in which FLAHERTY and ZAPPALA, JJ., join.

ROBERTS, Chief Justice, dissenting.

In this case, the trial judge, having found appellant guilty of aggravated assault and related charges on the basis of circumstantial evidence, was presented with after-discovered evidence of sufficient importance and trustworthiness to cause the judge to believe that appellant may have been innocent of the charges, and hence to order a new trial. Through mischaracterization of the record, the majority distorts the legitimate doubts and laudable concern of the trial judge—the original fact finder—about the correctness of the verdict and ignores the impropriety of the Commonwealth's refusal to aid the trial court in its pursuit of justice by granting immunity to appellant's co-indictee, who has already been convicted. The affirmance of a judgment of sentence which may well have been erroneously imposed compels dissent.

In finding appellant guilty at the conclusion of a two-day bench trial, the trial judge, the Honorable Lois G. Forer, found as a fact that neither of the Commonwealth's eyewitnesses had been able to identify appellant by his face. The judge declined to make a finding as to whether or not Commonwealth witness James Lark had in fact heard appellant admit his participation in the crimes charged, stating that she would "put ... aside Mr. Lark's testimony as to the admission" and base her verdict upon a finding "that

the person arrested in the dark red jacket and cap by Officer Carr, is the person identified by everyone as wearing the jacket and cap and engaging in this incident." (N.T. 161–163.) Three months after the verdict, appellant's counsel, Assistant Public Defender Patricia Pierce, Esquire, filed a supplemental post-verdict motion stating that she had recently spoken with Franklin Green, Esquire, privately retained counsel for appellant's co-indictee, Kenneth Hill (who was tried and convicted separately), and had been informed that, prior to Hill's trial, Hill had admitted to counsel his involvement in the shooting incident and, as part of the admission, had stated that appellant was in no way involved in the shooting. The motion further stated that, because Hill had denied involvement in the shooting at his own trial, Hill's testimony as to his pre-trial conversation with his counsel could subject him to a charge of perjury. Accordingly the motion asked that Hill be granted limited immunity with regard to his testimony at the hearing on after-discovered evidence.

At the hearing, Hill's counsel did not deny that he had communicated with appellant's counsel or that Hill had made a statement to him exculpating appellant, but he refused to discuss the contents of the statement on the ground that it was a privileged communication between attorney and client. Hill's counsel further stated that if his client were called to testify, he would invoke his Fifth Amendment privilege against self incrimination.

The trial judge then requested the assistant district attorney to ask her superiors to grant immunity to Hill, noting that appellant had been convicted on the basis of circumstantial evidence and stating that she was "very anxious to have the testimony of Mr. Hill ... in the interests of justice.... The identification [was] by way of clothing and so forth, and if there was someone who admittedly was part of the group that committed these offenses, then this young man [ (appellant) ] ought to be freed."

At a second hearing, the assistant district attorney informed the court that the Commonwealth refused to grant

immunity to Hill because Hill had denied his involvement in the crime at his own trial, and either that denial or Hill's proffered testimony on the motion would be false. The assistant district attorney further stated that it was the Commonwealth's position that "immunity is not the proper remedy here; that immunity is used by the prosecution to aid the prosecution."

The court responded:

"Well, the prosecution may put the Court in the position of granting a new trial because there is probable cause to believe on the basis of Mr. Green that there may be evidence exonerating this defendant, and under our law, better let a guilty person go free than one innocent be convicted. That's the law."

The Commonwealth refused to reconsider and the court granted appellant a new trial.

From the foregoing facts, it should be apparent that the real issue in this case is not whether co-indictee Kenneth Hill's statement is admissible as "double hearsay" or whether a court may grant a defense witness immunity over prosecutorial objection. As the trial judge correctly observed, the real issue is whether an innocent person has been wrongly convicted. Observing that "post-verdict accomplice testimony should be considered with caution," the majority dismisses Hill's statement that appellant was not involved in the shooting as "clearly untrustworthy and unreliable, bordering on charade." The majority neglects to mention, however, that appellant's motion describes Hill's statement as having been made to counsel *prior to trial*, and not, as the majority implies, following conviction. When Hill's statement exculpating appellant is viewed in its proper context, the majority's attack upon the credibility of that statement is unfounded. Basic common sense compels the conclusion that Hill's pretrial admission of his guilt to his counsel with its exculpation of appellant is inherently more credible than Hill's *subsequent*, self-serving testimony at his trial that he was not involved in the shooting inci-

dent—testimony which was necessarily found incredible through the verdict of guilty.

The credibility of Franklin Green, Hill's counsel, cannot seriously be questioned. Confronted with a pretrial statement from his client admitting guilt and exonerating appellant, Mr. Green was placed, as the trial court observed,

"in an unenviable dilemma. He has information that a convicted person is probably innocent. As an officer of the Court it would be his duty to come forward with such information unless it was privileged or the revelation of the information would conflict with some other obligation. Canon 4 of the Canons of Professional Responsibility states: 'A lawyer should Preserve the Confidences and Secrets of a Client.' Obviously Mr. Green cannot testify as to what his client told him. Under these circumstances, he took what was probably the only course available to him. He told Ms. Pierce, Johnny Scott's lawyer, so that she could take appropriate action on behalf of her client."

What reason, other than the prevention of manifest injustice, could Mr. Green have possibly had for revealing his client's privileged communication? The majority does not say. Nor does the majority provide any basis, for doubting the veracity of appellant's counsel.*

As there is no reason to doubt that Hill's counsel and appellant's counsel acted in good faith, and every reason to believe that Hill's pretrial, privileged communication to his attorney implicating himself and exonerating appellant is more credible than his self-serving trial testimony, the only question remaining is the availability of Hill's testimony to

---

* The majority's references to the "unsworn" nature of this motion are misleading. Although the motion was signed by Ms. Pierce's superior, it was identified at the hearing on the proffered after-discovered evidence as having been prepared by Ms. Pierce, who also argued the motion to the court. Additionally, the trial court explicitly found that "the statement of Ms. Pierce is reliable" and that "no useful purpose would be served by requiring Ms. Pierce to repeat her presentation in the form of an affidavit."

appellant on retrial. The Commonwealth's argument that courts have no power to compel a grant of immunity to a defense witness completely ignores the crucial question of why the Commonwealth, on this record, would refuse to grant Hill immunity in the first place. Hill has already been convicted for his part in the crimes charged. There is no record of his ever having appealed from that conviction. Assuming that Hill would testify as set forth in appellant's motion, all that the Commonwealth would sacrifice by granting limited immunity to Hill is the opportunity to prosecute him for committing perjury at his first trial in 1979, an opportunity which has already existed for four years but which the Commonwealth has not chosen to seize. And, of course, if Hill were to stand by his trial testimony, nothing would be lost at all.

As this Court has repeatedly stated, "[t]he duty of the prosecutor is to seek justice, not merely to convict." *Commonwealth v. Starks*, 479 Pa. 51, 56, 387 A.2d 829, 831 (1978), quoting ABA Standards Relating to the Prosecution Function § 1.1(c). Accord, e.g., *Commonwealth v. Collins*, 462 Pa. 495, 341 A.2d 492 (1975); *Commonwealth v. Potter*, 445 Pa. 284, 285 A.2d 492 (1971). In keeping with this duty, the Commonwealth clearly should have agreed—and should now agree—to grant limited immunity to Kenneth Hill so that the possibility that appellant has been wrongly convicted may be fully explored. Where, as here, the trial court is satisfied that an innocent person may have been improperly convicted, due process requires that a limited grant of immunity be entered. See *Government of Virgin Islands v. Smith*, 615 F.2d 964 (3d Cir.1980).

The order of the Superior Court should be reversed and the order of the trial court granting appellant a new trial reinstated.

FLAHERTY and ZAPPALA, JJ., join in this dissenting opinion.