J-S77028-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| REGINALD EADDY | |
| Appellant | No. 750 EDA 2014 |

Appeal from the PCRA Order February 21, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0007273-2009

BEFORE:  STABILE, J., JENKINS, J., and STRASSBURGER, J.[*]

MEMORANDUM BY JENKINS, J.:                    **FILED JANUARY 15, 2015**

Reginald Eaddy appeals from the order of the Philadelphia Court of Common Pleas denying his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9541 *et seq*.  We affirm.

The trial court found the following facts:

> On January 3, 2009, Deborah Stokes and Karen Broadnax were in the basement of Ms. Stokes' home watching television while Ms. Broadnax completed a college term paper.  At approximately 9:00 p.m., Ms. Stokes heard a knock on the side entrance to the basement. After learning that it was [Eaddy], Ms. Stokes asked Ms. Broadnax to open the door, as she and defendant had been friends for about five (5) months.  [Eaddy] entered with another, unidentified man, and the two men each took a seat at a table in the room.  Because it was wintertime, the women did not pay much attention to the fact that neither [Eaddy]

_____

[*] Retired Senior Judge assigned to the Superior Court.

nor the unidentified man removed their gloves after entering Ms. Stokes' home. Approximately thirty (30) minutes later, complainant Mikal Ellis entered Ms. Stokes' home, mentioning that he had just closed the barber shop where he worked. With his car still running outside, Mr. Ellis also took a seat at the table with Ms. Broadnax, [Eaddy], and the unidentified male, while Ms. Stokes was seated on her bed just a few feet away.

About five (5) minutes later, the unidentified man stood up from the table, pointed a gun at the complainants and declared[,] "[d]on't nobody f_____g move." Standing in close proximity to everyone, the unidentified man waved the gun around the room at each complainant. At the same time, [Eaddy] also stood up and picked up items from the table. Fearing for her life, Ms. Broadnax attempted to inch away from the table toward the door, and [Eaddy] grabbed her by the hood of her sweatshirt, saying "[y]ou are not going any f_____g where, nobody is going to hurt you." Simultaneously, complainant Ellis pushed the gunman and ran up the stairs to the first floor of Ms. Stokes' home. The unidentified man chased complainant Ellis, and as [Eaddy] followed in the pursuit, he yelled to Mr. Ellis[,] "[n]o don't run, take that s__t. Take that s__t like a man." When the three men left the room, Ms. Stokes and Ms. Broadnax both fled the basement through different doors to neighboring homes where they called 9-1-1. Upstairs, Mr. Ellis unsuccessfully attempted to wrestle the gun away from the unidentified man before succumbing to the robbery, in which $800 cash, his wallet, credit cards and his car keys were stolen. Following the robbery, [Eaddy] and the unidentified man fled the home through the basement.

The police arrived within minutes, and accompanied the complainants' reentry to the home. When they entered the home, they observed that it had been ransacked, and Ms. Broadnax's house keys and car keys, which had been on the table in the area where [Eaddy] was observed picking up items, were no longer there. The complainants were taken to the police station, where they gave statements to the police. As Ms. Stokes knew [Eaddy], she was able to provide police with a nickname, cell phone number and address information which was subsequently used to generate a photographic array. Complainants Broadnax

and Stokes subsequently identified [Eaddy] from this photographic array. Mr. Ellis' vehicle was recovered a few days after the robbery and returned to him, but police were unable to recover any fingerprints. Detective Cremen secured an arrest warrant on February 5, 2009 and used the cell phone number provided by complainant Stokes to notify [Eaddy] of the warrant for his arrest. Detective Cremen also encouraged [Eaddy] to surrender and on February 11, 2009, he did so.

Opinion, 7/2/2012, at 1-3 (citing Trial Court Opinion, 8/15/2011, at 1-3) (internal citations to the record omitted).

On August 18, 2010, a jury found Eaddy guilty of three counts of robbery.[1] On September 30, 2010, the trial court sentenced Eaddy to an aggregate sentence of 20 to 40 years' incarceration.[2] He filed post-sentence motions, which the trial court denied. Eaddy appealed, raising three claims, including a claim that the Commonwealth did not present sufficient evidence to support the robbery convictions. We affirmed his judgment of sentence. ***Commonwealth v. Eaddy***, No. 601 EDA 2011 (Pa.Super. filed July 2, 2012) (unpublished memorandum).

On April 2, 2013, Eaddy filed a timely *pro se* PCRA petition. On October 4, 2013, the court held a hearing pursuant to ***Commonwealth v.***

_____

[1] 18 Pa.C.S. § 3701.

[2] The court sentenced Eaddy to 10 to 20 years' incarceration for each robbery. The sentence imposed for the second robbery count was to run concurrent to the sentence imposed for the first count and the sentence imposed for third robbery count was to run consecutive to the sentence imposed on the first count.

***Grazier***,[3] and found Eaddy's decision to proceed *pro se* was knowing, voluntary, and intelligent. Order, 10/4/2013. On January 10, 2014, the court issued a notice of its intent to dismiss the PCRA petition without a hearing pursuant to Pennsylvania Rule of Criminal Procedure 907. On February 21, 2014, the court dismissed the PCRA petition. On March 5, 2014, Eaddy filed a timely notice of appeal. Both Eaddy and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

Eaddy raises the following issues on appeal:

> I. Whether PCRA Court erred by concluding that direct appeal counsel was not ineffective for failure to properly challenge the sufficiency of the evidence as to robbery in regards to Karen Broadnax and Debora Stokes?
>
> II. Whether [Eaddy] is entitled to remand to the PCRA Court in light of after-discovered evidence?

Appellant's Brief at 5 (capitalization removed).

Eaddy's first issue raises an ineffective assistance of counsel claim. For ineffectiveness of counsel claims, the petitioner must establish: "(1) that the underlying claim has merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors or omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different." ***Commonwealth v. Ousley***, 21 A.3d 1238, 1244 (Pa.Super.2011) (quoting ***Commonwealth v. Rivera***, 10

---

[3] 713 A.2d 81 (Pa.1998).

A.3d 1276, 1279 (Pa.Super.2010)). "[C]ounsel is presumed to be effective and the burden of demonstrating ineffectiveness rests on appellant." *Id.* "The failure to prove any one of the three [ineffectiveness] prongs results in the failure of petitioner's claim." *Id.* (quoting *Rivera*, 10 A.3d at 1279).

On direct appeal, this Court held the Commonwealth presented sufficient evidence to find Eaddy committed the three robberies. *Eaddy*, No. 601 EDA 2011, slip. op. at 5-8. Eaddy now claims counsel was ineffective for failing to present the following arguments in support of the insufficient evidence claim on direct appeal: (1) Ms. Stokes and Ms. Broadnax were not placed in fear of immediate serious bodily injury after the gunman chased Mr. Ellis upstairs because Eaddy did not possess a firearm and, because the victims did not know the keys were missing, they did not know they were being robbed; and (2) the trial court incorrectly summarized the facts when it stated Eaddy began to collect items from the table after the gunman brandished a firearm. These arguments are meritless.

A robbery occurs when, during a theft, an attempt to commit a theft, or the flight after the attempt or commission of a theft, a person threatens another with or intentionally puts him in fear of immediate serious bodily injury. 18 Pa.C.S. § 3701(a)(1)(ii), (a)(2). A person is liable as an accomplice where, "with the intent of promoting or facilitating the commission of the offense, he . . . aids or . . . attempts to aid [another] person in . . . committing it[.]" 18 Pa.C.S. § 306(c)(1).

The arguments Eaddy raises in his PCRA appellate brief would not have altered this Court's determination on direct appeal that the Commonwealth presented sufficient evidence to support the finding that Eaddy was an accomplice to the commission of a robbery. *Eaddy*, No. 601 EDA 2011, slip op. at 7. Ms. Stokes and Ms. Broadnax were placed in fear of serious bodily injury the moment the gunman brandished a firearm. *See Commonwealth v. Gillard*, 850 A.2d 1273, 1275-76 (Pa.Super.2004) (sufficient evidence established bar patrons were placed in fear of serious bodily injury and supported robbery convictions where defendant waved a gun at bar patrons, even though defendant only took money from the register); *Commonwealth v. Rivera*, 503 A.2d 11, 12-13 (Pa.Super.1985) (evidence gun was pointed at victims during robbery sufficient to establish perpetrators could inflict death or serious bodily injury). This fear did not disappear merely because the gunman went upstairs. Further, Eaddy's comments and actions supported a determination that he facilitated and participated in the robbery. *See* 18 Pa.C.S. § 306(c)(1); *Eaddy*, No. 601 EDA 2011, slip op. at 7-8. Eaddy encouraged the gunman, grabbed Ms. Broadnax to prevent her from leaving, made threatening statements to Ms. Broadnax and Mr. Ellis, chased Mr. Ellis, and took items from the table during the robbery. *Eaddy*, No. 601 EDA 2011, slip op. at 7-8.

Eaddy also claims counsel was ineffective for failing to correct the trial court's inaccurate summation of the facts. Eaddy maintains the statement that a gun was pointed at the victims while Eaddy collected items from the

table was not based on the testimony. Appellant's Brief at 11-12. We disagree.

There was testimony at trial that Eaddy collected items from the table and testimony that the gunman pointed the gun at the victims. *See, e.g.,* N.T., 8/17/2010, at 55-56, 64-65. It is irrelevant whether these events occurred simultaneously. *See Commonwealth v. Gillard*, 850 A.2d 1273, 1275-76 (Pa.Super.2004) (waving gun at bar patrons sufficient to support conviction even though defendant attempted to take money only from the register, not patrons); *Commonwealth v. Horton*, 644 A.2d 181, 184 (Pa.1994) (evidence appellant was with men who shot and robbed victim and evidence appellant searched pockets sufficient to support robbery convictions). Accordingly, Eaddy's ineffective assistance of counsel claims lack merit.

Eaddy's next claim is that his case should be remanded for a hearing based on after-acquired evidence in the form of an affidavit from Ms. Stokes claiming she found Ms. Broadnax's keys. Appellant's Brief at 12-13. This claim is waived, as it was not raised in Eaddy's PCRA petition or his 1925(b) statement. *Commonwealth v. Thomas*, 744 A.2d 713, 715 n.4 (Pa.2000) (claims waived when not raised in PCRA petition); *Commonwealth v. Hill*, 16 A.3d 484, 491 (Pa.2011) (claims waived where not raised in 1925(b) statement). Further, it lacks merit.

A defendant is not entitled to a new trial based on after-discovered evidence, unless the evidence "could not have been discovered until after

the trial despite reasonable diligence, is not used for merely cumulative or impeachment purposes, and is of such a nature that it would compel a different outcome." **Commonwealth v. Albrecht**, 720 A.2d 693, 707 (Pa.1998) (quoting **Commonwealth v. Scott**, 470 A.2d 91, 93 (Pa.1983)).

Eaddy does not explain why he could not have obtained the affidavit of Ms. Stokes, a trial witness, prior to the trial. Further, the affidavit claiming Ms. Stokes found the keys would not have changed the trial's outcome. Eaddy encouraged the gunman, threatened the victims, restrained and chased the victims, and rummaged through the table during the course of the robbery. Regardless whether the keys were discovered, and regardless whether Eaddy took the keys, this evidence was sufficient to establish Eaddy committed the robberies. **Eaddy**, No. 601 EDA 2011, slip op. at 7 (citing 18 Pa.C.S. § 3701(a)(2)).

Order Affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/15/2015