J-S35030-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| BRIAN GOLSON, A/K/A ANTHONY HILL | |
| Appellant | No. 2632 EDA 2019 |

Appeal from the PCRA Order August 27, 2019
In the Court of Common Pleas of Montgomery County
Criminal Division at No.: CP-46-CR-0008553-2014

BEFORE:  BOWES, J., STABILE, J., and COLINS, J.[*]

MEMORANDUM BY STABILE, J.:                **FILED OCTOBER 19, 2020**

Appellant, Brian Golson, a/k/a Anthony Hill, appeals from an order denying his petition for relief under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541—9546.  Appellant is serving a sentence of 50—100 years' imprisonment for sexual offenses against two female victims, A.B. and M.C.  Appellant claimed in his PCRA filings that he is entitled to relief on the basis of after-discovered evidence and ineffective assistance of counsel.  We hold that the PCRA court properly denied relief, and we affirm.

The trial court summarized the evidence against Appellant as follows:

> In or about September 2014, [A.B.] was sexually assaulted in Pottstown, Montgomery County.  On a date prior to the assault, a car in which Appellant was a passenger pulled over and [the driver] offered [A.B.] a ride, which she accepted.  She knew the driver and had previously used drugs with him; [Appellant] was a passenger in the car and introduced himself as Breon.  On the

_____

[*] Retired Senior Judge assigned to the Superior Court.

evening of the assault, [A.B.] was walking home, alone, from a convenience store.  On her way to get cigarettes from another store, she ran into [Appellant] on the corner of King and Hanover streets.  She recognized him from their previous encounter.  He asked her for a cigarette, which she gave him.  She told him she was on her way to get more, at which time he offered to walk with her because "pretty young girls shouldn't be walking around Pottstown at night."  She thought he seemed friendly and protective and that she could trust him.  He convinced her to come with him to a friend's house and told her that they could get cigarettes from the friend.  They proceeded to walk to a house on Walnut Street.  When they arrived at the house, there were three men sitting on the porch; [Appellant] signaled to the men and they told him to walk into the alley.  [Appellant] instructed [A.B.] to sit on the curb.  At this point, he spoke with a man he identified as his nephew in the backyard, out of her earshot.  They returned to the alley and the man identified as [Appellant's supposed] nephew told her to get on the ground[;] when she did not comply, she was kicked in the back.  She lay on the ground.

At this point, she heard [Appellant] and his [supposed] nephew discussing a "jimmy," which she understood to be slang for a condom. Two additional men were outside at this point, but [A.B.] could not see them.  There was further discussion about obtaining a condom.  [Appellant] told the men he knew she was clean. Fearing she was about to be raped, [A.B.] told the men she had a terminal pregnancy.  [Appellant] said she could do other things[,] at which point his [supposed] nephew indicated it was her lucky day.  At this time, the additional men went back inside[,] leaving [Appellant] and his [supposed] nephew in the alley with [A.B.]. [Appellant] told her to get up, and she tried to get away, but [Appellant] pulled out a knife.  He then threatened to kill her and her fiancé who was in jail at that time.  He held the knife to her collarbone and told her if she helped him, he'd help her. [Appellant's supposed] nephew told her to get back on the ground, and she did.  He then pulled down his pants and told her to perform oral sex on him, which she did. At some point, he ordered her to get up and pulled down her pants and began touching her before forcing her to get back down and finish.  The [supposed] nephew ejaculated, and she tried to get away, but [Appellant] followed her.  [He] told her he wanted to help her get cleaned up and that there was a house they could go to.  Afraid to walk away from him, he took her to "Uncle Dave's house on North Charlotte Street.

On the porch, he took out her pack of cigarettes, which he took from her when she was laying in the alley, and took crack cocaine out of the pack and proceeded to smoke it. [A.B.] indicated that she was going to go home, [and Appellant] told her to sit on his lap if she wanted her cigarettes and her money back. He pulled her closer to him and reached into her bra. He also pulled down her pants and fondled her butt. When she told him no and that she wanted to leave, he became aggressive. She told him to keep her money and cigarettes and pulled up her pants and started to leave. When she made it to the street, she ran until she returned to her home. Upon arriving home, she told her roommate some of what happened to her, omitting the sexual assault. He urged her to call the police but she refused because [Appellant] had threatened her and her fiancé.

On October 16, 2014, [A.B.] went to the Pottstown Police station because her roommate was arrested. While she was on her way to the station, [Appellant] pulled up beside her in a gray minivan and proceeded to follow her down High Street. He parked in the lot across from her apartment and told her he would wait for her. As a result, [A.B.] reported the sexual assault to police on that date.

[M.C.] met [Appellant] in or around August or September 2014 when he approached her as she sat on her front steps of her apartment at 155 King Street in Pottstown, Montgomery County, waiting for her son to come home from school. [Appellant] took her hand, kissed it, and introduced himself. She ignored him, and when her boyfriend arrived home she went upstairs. In or around late August 2014, [M.C.] was walking home by herself. [Appellant] approached her at King and Charlotte Streets, grabbed her by the left arm and told her not to scream or he would cut her up into little pieces. She felt something pressed into her low back, which she thought may have been a gun. He led her up Charlotte Street and took her into an abandoned building in an alley. At that point, he handed her off to a tall, light-skinned African American male with short hair, who dragged her by her hair backward, up the stairs into the abandoned house. Once inside the house, the unknown man forced her onto all fours and anally raped her. The man brought her back downstairs to [Appellant], at which time he tossed [Appellant] small baggies containing what [M.C.] recognized to be crack cocaine or cocaine.

[Appellant] then took her by the arm and led her across the alley into a backyard. He then pushed her to the ground, pressed his chest against hers and removed her pants. Then, he vaginally raped her. When he finished, she pulled her pants up and ran home where she sat in her truck and thought about what happened to her. She was worried that her boyfriend would think she was cheating on him. She removed her underwear and threw it out and changed into clean clothes that were in her truck. She did not tell her boyfriend what happened to her.

[M.C.] reported her rape to police in October of 2014. Prior to going to the police, her friend showed her a picture of a man [M.C.] recognized as [Appellant]. She also spoke with [A.B.], who she had known for a short time. She showed [A.B.] the picture and ultimately both women went to the police.

Trial Court Opinion, 7/14/17, at 1-5 (citations omitted).

On June 1, 2015, with regard to A.B., the jury found Appellant guilty of criminal conspiracy to commit involuntary deviate sexual intercourse ("IDSI"), criminal conspiracy to commit sexual assault, indecent assault by threat of forcible compulsion, indecent assault without consent, and terroristic threats. With regard to M.C., the jury convicted Appellant of criminal conspiracy to commit rape by threat of forcible compulsion, criminal conspiracy to commit aggravated indecent assault, rape by threat of forcible compulsion, sexual assault, and terroristic threats. The trial court sentenced Appellant to an aggregate of 50—100 years' imprisonment and declared him a sexually violent predator ("SVP"). On direct appeal, this Court vacated the portion of Appellant's sentence finding him an SVP and affirmed in all other respects. *Commonwealth v. Golson*, 189 A.3d 994 (Pa. Super. 2018). Appellant did not file a petition for allowance of appeal in the Supreme Court.

- 4 -

Subsequently, Appellant filed a timely PCRA petition, and later an amended PCRA petition through court-appointed counsel, claiming that he was entitled to relief due to ineffective assistance of counsel and after-discovered evidence. Appellant also filed petitions for leave to take additional discovery and for appointment of an investigator.

The alleged after-discovered evidence consisted of three affidavits. Appellant submitted his own affidavit that in 2018, M.C. told someone named Ashley Ball that someone other than Appellant attacked here.

Appellant also filed affidavits by two prison inmates, Cody Phipps and Keith Gillman, concerning statements allegedly made to them by Michael Hamm, A.B.'s boyfriend. During Appellant's trial, Hamm testified as a Commonwealth witness concerning a statement he made to the police during their investigation into Appellant's crimes against A.B. Hamm testified that he was in custody for a probation violation at the time of trial, but he did not receive any promises from the Commonwealth in return for his testimony. N.T., 5/29/15, at 98-99. The affidavits that Phipps and Gillman gave to Appellant portrayed Hamm as a liar. Phipps averred that Hamm told him that A.B. and M.C. falsely identified Appellant as their attacker. Gillman averred that Hamm admitted that he testified falsely against Appellant during trial to avenge Appellant's acts of selling Hamm's girlfriend crack under the false pretense that it was heroin and then refusing to return her money. Both

Phipps and Gillman averred that Hamm admitted testifying against Appellant in exchange for leniency in his own pending criminal case.

The PCRA court denied Appellant's petitions for discovery and appointment of an investigator. On August 5, 2019, the PCRA court entered a Pa.R.Crim.P. 907 notice of intent to dismiss Appellant's amended PCRA petition without a hearing. Two weeks later, Appellant filed a response in opposition to the Rule 907 notice. On August 28, 2019, the PCRA court dismissed Appellant's amended PCRA petition.

Appellant filed a timely notice of appeal. Subsequently, Appellant filed a timely Pa.R.A.P. 1925(b) statement raising claims of after-discovered evidence but not claims of ineffective assistance of counsel. The PCRA court filed an opinion concluding that the affidavits submitted by Appellant were immaterial because they would not have changed the outcome of Appellant's trial. As to Phipps' and Gillman's affidavits, the PCRA court reasoned that

> the testimony is not exculpatory in that even if Hamm's credibility was attacked in this manner the evidence at trial consists of two separate victims describing two separate sexual assaults whose testimony evidences a common scheme. Based upon the strength of this evidence adduced at trial, and the weak nature of the offered evidence, it is not exculpatory.

PCRA Court Opinion, 11/12/19, at 9, 10.

Appellant, through private counsel, raises the following issues in this appeal:

> I. Did the PCRA Court err, violating Appellant's constitutional rights, by finding without having conducted an evidentiary hearing that the after-discovered evidence from Keith Michael Gillman and

Cody Phipps concerning statements made by Commonwealth witness Michael Hamm could only be used for impeachment purposes, was cumulative of evidence presented at trial, and would not likely produce a different verdict if presented at re-trial?

II. Did the PCRA Court abuse its discretion, violating Appellant's right to due process and effective representation when it denied the Motion for Appointment of a Private Investigator?

III. Did the PCRA Court abuse its discretion, violating Appellant's right to due process and effective representation, when it denied the Motion for Discovery?

IV. Were Appellant's rights pursuant to the Sixth and Fourteenth Amendments of the U.S. Constitution and Article 1, [Section] 9 of the Pennsylvania Constitution violated by the PCRA Court's failure to rule on the merits of Appellant's ineffective assistance of counsel claims which were raised and argued during the PCRA proceedings?

Appellant's Brief at 3.

Appellant first argues that the PCRA court erroneously denied his petition without a hearing, because Gillman's and Phipps' affidavits concerning the Commonwealth's witness, Hamm, entitles him to relief as after-discovered evidence. Our review of the grant or denial of PCRA relief is limited to examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error. *Commonwealth v. Cox*, 146 A.3d 221, 226 n.9 (Pa. 2016). The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions. *Commonwealth v. Burton*, 158 A.3d 618, 627 n.13 (Pa. 2017).

The PCRA provides relief for a petitioner who demonstrates his conviction or sentence resulted from "[t]he unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced." 42 Pa.C.S.A. § 9543(a)(2)(vi). To receive a new trial based on after-discovered evidence, a PCRA petitioner must show that the new evidence: (1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence, (2) is not merely corroborative or cumulative, (3) will not be used solely to impeach the credibility of a witness, and (4) would likely result in a different verdict if a new trial were granted. *Commonwealth v. Williams*, 215 A.3d 1019, 1024 (Pa. Super. 2019). Moreover, after-acquired evidence must be "producible and admissible." *Commonwealth v. Small*, 189 A.3d 961, 979 n.14 (Pa. 2018).

Appellant's claim of after-discovered evidence fails because Gillman's and Phipps' affidavits are inadmissible double hearsay.[1] Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered into evidence to prove the truth of the matter asserted." Pa.R.E. 801(c). Hearsay is inadmissible unless it meets an exception to the hearsay rule. Pa.R.E. 802. Double hearsay is an out-of-court declaration

---

[1] Although the PCRA court did not dismiss Appellant's amended petition on the ground that the proposed testimony was inadmissible hearsay, we may affirm the order of dismissal for any reason supported by the record. *In Re A.J.R.-H.*, 188 A.3d 1157, 1175-76 (Pa. 2018).

containing another out-of-court declaration. **Commonwealth v. Chmiel**, 738 A.2d 406, 417 (Pa. 1999). "In order for double hearsay to be admissible, the reliability and trustworthiness of each declarant must be independently established. This requirement is satisfied when each statement comes within an exception to the hearsay rule." **Commonwealth v. Laich**, 777 A.2d 1057, 1060 (Pa. 2001). Here, Gillman and Phipps relate what Hamm told them (one level of hearsay) about what the victims told Hamm (a second level of hearsay). Neither level of hearsay satisfies any exception to the hearsay rule. This evidence plainly is inadmissible and does not furnish relief under the after-discovered evidence subsection of the PCRA. **Commonwealth v. Scott**, 470 A.2d 91, 95 (Pa. 1983) (after-discovered evidence claim failed where alleged exculpatory statement, a statement relayed to defense counsel by attorney for co-indictee, which in turn had been told to him by co-indictee, was double hearsay).

In addition, Appellant's after-discovered evidence argument fails because Appellant's own affidavit rests upon hearsay, namely Ashley Ball's alleged statement concerning M.C.'s admission that someone other than Appellant attacked her.

We also agree with the PCRA court's determination that the alleged after-discovered evidence would not have changed the outcome of trial. Courts view recantation evidence, *i.e.*, evidence that "withdraw[s] or repudiate[s] that which went before," **Commonwealth v. Abu-Jamal**, 941

- 9 -

A.2d 1263, 1266 n.7 (Pa. 2008), as "exceedingly unreliable." ***Commonwealth v. Loner***, 836 A.2d 125, 135 (Pa. Super. 2003) (*en banc*). The affidavits in Appellant's PCRA papers, if anything, exceed this standard, because they are hearsay claims of recantations by other persons (Hamm and M.C.). Weighed against the compelling and detailed testimony of the two victims about the two sexual assaults, this evidence would not have resulted in a different verdict.

For these reasons, the PCRA court properly denied Appellant's amended PCRA petition without a hearing. Pa.R.Crim.P. 907 (court may dismiss PCRA petition without hearing where there are no genuine issues of material fact and petitioner has no right to relief, and no purpose would be served by any further proceedings).

Next, Appellant argues that the PCRA court improperly denied his motion for appointment of an investigator to obtain affidavits from other individuals relating to his claim of after-discovered evidence. We disagree.

There is no constitutional right to the appointment of experts or investigators, at the public expense, on post-conviction review. ***Commonwealth v. Woods***, 575 A.2d 601, 604 (Pa. Super. 1990). Whether to appoint an expert is vested in the discretion of the lower court. ***Id.*** "Generally, the trial court will not be found to have abused its discretion in the absence of a clear showing as to the content, relevancy and materiality of the testimony of the potential witnesses." ***Id.***

As we stated above, Appellant's request for PCRA relief rests on hearsay within Phipps', Gillman's and Appellant's affidavits. Thus, Appellant failed to make the required showing as to the content, relevance, and materiality of the potential witnesses' testimony that would have justified the appointment of a court-appointed investigator. Accordingly, the PCRA court acted within its discretion by denying his motion for a court-appointed investigator.

Next, Appellant argues that the PCRA abused its discretion by denying his request for discovery. We disagree. The Rules of Criminal Procedure provide that that "no discovery shall be permitted at any stage of the [post-conviction] proceedings, except upon leave of court after a showing of exceptional circumstances." Pa.R.Crim.P. 902(E)(1). There were no exceptional circumstances here. The alleged after-discovered evidence is nothing but hearsay, and it is speculative to suggest that this hearsay might be true. *Commonwealth v. Watley*, 153 A.3d 1034, 1048 (Pa. Super. 2016) (PCRA court properly denied discovery for fingerprint analysis of identification card; although petitioner sought to establish mistaken identity on ground he was not same person as driver who fled traffic stop on foot, his claim was speculative); *Commonwealth v. Frey*, 41 A.3d 605, 612 (Pa. Super. 2012) ("mere speculation that exculpatory evidence exists does not constitute an exceptional circumstance warranting discovery").

Finally, Appellant argues that the PCRA court failed to rule on the merits of his ineffective assistance of counsel claims. Appellant is incorrect. The

- 11 -

PCRA court denied his ineffectiveness claims by dismissing his amended PCRA petition without a hearing.  In addition, Appellant waived his ineffectiveness claims by failing to raise them in his Rule 1925(b) statement. *Commonwealth v. Lord*, 719 A.2d 306, 308 (Pa. 1998) (any issues not raised in a 1925(b) statement will be found waived).

In summary, Appellant's assertion of after-discovered evidence lacks merit, and the PCRA court did not abuse its discretion in refusing to permit discovery under Rule 902 or to provide for a court-appointed investigator.  The PCRA court denied Appellant's claims of ineffective assistance, and he failed to preserve his ineffectiveness claims for appeal.  We therefore affirm the order dismissing Appellant's PCRA petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/19/20