J-S27041-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KEVIN PICKARD | : | |
| | : | |
| Appellant | : | No. 2276 EDA 2023 |

Appeal from the PCRA Order Entered August 10, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0013280-2010

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KEVIN PICKARD | : | |
| | : | |
| Appellant | : | No. 2277 EDA 2023 |

Appeal from the PCRA Order Entered August 10, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0013279-2010

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KEVIN PICKARD | : | |
| | : | |
| Appellant | : | No. 2278 EDA 2023 |

Appeal from the PCRA Order Entered August 10, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0013277-2010

BEFORE: LAZARUS, P.J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.: **FILED DECEMBER 3, 2024**

Appellant, Kevin Pickard, appeals from the August 10, 2023, orders entered in the Court of Common Pleas of Philadelphia County denying his timely petitions filed under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-95456, without an evidentiary hearing, at three separate trial court docket numbers: CP-51-CR-0013280-2010, CP-51-CR-0013279-2010, and CP-51-CR-0013277-2010. After a careful review, we affirm.

The relevant facts and procedural history are as follows: Appellant was arrested in connection with the September 18, 2010, shooting of Marquis Wesley, as well as two juveniles, J.B. and D.B. Appellant, represented by counsel, proceeded to a jury trial on June 13, 2012. The PCRA court has aptly summarized the evidence presented at the jury trial.

> At trial, the evidence established that, on September 18, 2010, [at] around 3:30 p.m., [Appellant] exited a store on the corner of 67th Street and Woodland Avenue in Philadelphia. Immediately following exiting the store, [Appellant] fired several gunshots. One of the shots hit [Marquis] Wesley in the thigh as he exited the same store. Eight-year-old D.B. and two-year-old J.B. were playing on the steps outside of their home when they were both struck by bullets. N.T., 6/13/12, 46; N.T., 6/14/12, at 5-17.
>
> Wesley testified that he had exited the store and was walking to go to his house when he was shot in the thigh. He testified that he had gone into the store to pay his cell phone bill and, while he was in there, a man entered the store wearing a Dickie set with either a hood or hat on. At trial, Wesley testified

_____

[*] Former Justice specially assigned to the Superior Court.

- 2 -

that the man in the Dickie set was not the shooter and did not have a similar appearance to the shooter. However, his statement to police identifying [Appellant] as the shooter was introduced as was surveillance video from the store. N.T., 6/13/12, 84; N.T., 6/14/12, at 10-17, 22-24, 36-45.

The Commonwealth theorized at trial that the shooting was caused by an ongoing dispute between [Appellant, as well as] his friends and family, and another group from the neighborhood. Two of [Appellant's] cousins, Davonne and Donte Sheppard, testified at trial. Davonne testified that he identified [Appellant] as the man in still pictures from the cell phone store's surveillance video when he gave a statement to police but that he lied to the police about that so he would be able to go home. During trial, Davonne's statement to the police was read to him during his testimony, and he denied specific memory of the questions and repeated that he just told the police what they wanted to hear. In his statement, Davonne told the police that he knew about a shooting that occurred outside the Hut Bar on August 7, 2010. He also told the police about the August 18, 2010, shooting of his brother, Donte, and identified Wesley as the [person who shot Donte]. N.T., 6/15/12, 176-87, 195, 197.

Donte Sheppard testified at trial that he did not remember giving a police statement regarding the September 18, 2010, shooting. The statement was read to Donte during his testimony. In the statement, Donte identified [Appellant] as the man in the photo stills taken from the cell phone store surveillance. The police statement Donte gave after he was shot [on August 18, 2010,] was also read to Donte while he was testifying. In that statement, Donte identified Wesley as the shooter and stated that the shooting was a retaliation for another shooting. N.T., 6/14/12, 209-11.

PCRA Court Opinion, filed 11/16/23, at 2-3.

Furthermore, as this Court has previously indicated regarding the underlying procedural history:

On June 25, 2012, the jury found Appellant guilty of the following crimes: one count of aggravated assault at trial court docket number CP-51-CR-0013279-2010; a second count of aggravated assault at trial court docket number CP-51-CR-0013280-2010; and a third count of aggravated assault and one

- 3 -

count of possessing an instrument of crime ("PIC") at trial court docket number CP-51-CR-0013277-2010.[1] N.T., 6/25/12, at 10-12. [On August 10, 2012, the trial court sentenced Appellant to five to ten years in prison, to run concurrently, for each count of aggravated assault, 18 Pa.C.S.A. § 2702(a)(1), and for the one count of PIC, 18 Pa.C.S.A. § 907(a), the trial court sentenced Appellant to a concurrent term of five years of probation. Thus, the aggregate sentence was five to ten years in prison, to be followed by five years of probation.]

On August 16, 2012, the Commonwealth filed a motion for reconsideration, averring that the aggregate sentence was too lenient and asking the trial court to impose a longer term of total confinement. On August 17, 2012, the trial court granted the Commonwealth's motion for reconsideration and vacated the August 10, 2012, sentencing order. The trial court resentenced Appellant as follows: at trial court docket number CP-51-CR-0013277-2010, the trial court imposed a sentence of five to year years of incarceration for aggravated assault, followed by a consecutive term of two to four years of incarceration for PIC. N.T., 8/17/12, at 27. At trial court docket number CP-51-CR-0013279-2010, the trial court sentenced Appellant to a consecutive term of five to ten years of incarceration for aggravated assault, *id.* at 27-28, and at trial court docket number CP-51-CR-0013280-2010, the trial court imposed another consecutive sentence of five to ten years of incarceration. *Id.* at 28. The trial court ordered Appellant to serve the sentences consecutively, resulting in an aggregate sentence of seventeen to thirty-four years of incarceration. *Id.* Appellant did not file a direct appeal.

On November 15, 2012, Appellant filed a timely *pro se* [PCRA] petition….Thereafter, Appellant, *pro se*, filed numerous documents with the PCRA court, and eventually, the PCRA court appointed counsel. Counsel filed an amended PCRA petition on October 15, 2014, and the PCRA court held a hearing on January 29, 2016. Following the hearing, the PCRA court reinstated Appellant's right to file post-sentence motions and a direct appeal *nunc pro tunc*. Order, 1/29/16. [Thereafter, Appellant filed post-

_____

[1] Appellant was also charged with one count of attempted murder, 18 Pa.C.S.A. § 2502, at each trial court docket number. However, the jury was unable to reach a decision on these counts, and, therefore, the trial court declared a mistrial on all three counts of attempted murder.

sentence motions *nunc pro tunc*, which the trial court denied. Appellant then filed timely notices of appeal at each trial court docket number.]

***Commonwealth v. Pickard***, 255 A.3d 1271 (Table), 3443 EDA 2018, at \*2-3 (Pa.Super. filed 5/24/21) (unpublished memorandum) (citations to record omitted) (footnotes omitted) (footnote added).

In his appeals *nunc pro tunc* from his judgment of sentence entered on August 17, 2012, Appellant raised the single issue of whether the trial court abused its discretion in denying Appellant's post-sentence motion *nunc pro tunc*. ***Id.*** at \*4. Specifically, Appellant averred his sentences were unduly harsh and a product of judicial vindictiveness. ***Id.*** at \*6. This Court found no merit to Appellant's sentencing claims, and, thus, we affirmed the judgment of sentence on May 24, 2021. ***Id.*** Appellant did not file a petition for allowance of appeal with our Supreme Court.

On or about September 13, 2021, Appellant filed a timely *pro se* PCRA petition at each trial court docket number, and the PCRA court appointed counsel to assist Appellant. On April 4, 2022, Appellant filed a counseled amended PCRA petition at each trial court docket number.

After the Commonwealth filed an answer in opposition thereto, the PCRA court provided notice of its intent to dismiss Appellant's PCRA petitions without an evidentiary hearing pursuant to Pa.R.Crim.P. 907. Appellant filed responses thereto, and on August 10, 2023, the PCRA court denied Appellant's PCRA

petitions. On September 4, 2023, Appellant filed timely notices of appeal,[2] which this Court consolidated *sua sponte*, and all Pa.R.A.P. 1925 requirements have been met.

On appeal, Appellant sets forth the following sole issue in his "Statement of Question Involved" (verbatim):

> Did the trial court err when it denied, as a matter of law, Mr. Pickard's PCRA claim of new evidence that would have changed the outcome of the trial in the form of a signed certification of a Mr. Davonne Sheppard who averred that the police showed Mr. Sheppard a video of one of the shooting victims, Mr. Marquis Wesley, shooting a gun in the direction of the alleged shooter?

Appellant's Brief at 5 (suggested answer omitted).

Initially, we note:

> On appeal from the denial of PCRA relief, our standard of review calls for us to determine whether the ruling of the PCRA court is supported by the record and free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. The PCRA court's factual determinations are entitled to deference, but its legal determinations are subject to our plenary review.

***Commonwealth v. Nero***, 58 A.3d 802, 805 (Pa.Super. 2012) (quotation marks and quotations omitted).

---

[2] We note Appellant filed three notices of appeal with each listing all three trial court docket numbers. Each notice of appeal contained a handwritten offense tracking number next to only one of the three trial court docket numbers. We conclude Appellant has adequately complied with ***Commonwealth v. Walker***, 646 Pa. 456, 185 A.3d 969 (2018). ***See Commonwealth v. Johnson***, 236 A.3d 1141, 1148 (Pa.Super. 2020) (*en banc*) (holding "the fact that the notices contain [more than one] lower court number[ ] is of no consequence").

On appeal, Appellant contends that he is entitled to a new trial based on a claim of after-discovered evidence. Specifically, he indicates "one of the testifying trial witnesses, Mr. Davonne Sheppard, provided a notarized statement to [Appellant] that directly contradicted Mr. Sheppard's trial testimony."[3] Appellant's Brief at 10. Appellant avers Davonne's notarized statement reveals the police showed him a video, which depicted Wesley shooting a gun. Appellant asserts Davonne's statement further reveals Davonne "not only recognized Mr. Wesley," but it also "casts serious doubt" on whether Appellant, or in fact Wesley, shot the two juveniles. *Id.* at 11, 13. Appellant contends Davonne's notarized statement contradicts his trial testimony since Davonne testified at trial that he did not recognize Wesley, and he denied the police ever showed him a video of the shooting.

Relevantly, our Supreme Court has held the following:

> [T]o justify the grant of a new trial on the basis of after-discovered evidence, "the evidence must have been discovered after the trial and must be such that it could not have been obtained at the trial by reasonable diligence, must not be cumulative or merely impeach credibility, and must be such as would likely compel a different result[.]" *Commonwealth v. Schuck*, 401 Pa. 222, 164 A.2d 13, 17 (1960)[.] More recently, we have viewed this analysis in criminal cases as comprising four distinct requirements, each of which, if unproven by the petitioner, is fatal to the request for a new trial. As stated, this four-part test requires the petitioner to demonstrate the new evidence: (1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in

_____

[3] The notarized statement was dated September 25, 2021.

a different verdict if a new trial were granted. The test applies with full force to claims arising under Section 9543(a)(2)(vi) of the PCRA. In addition, we have held the proposed new evidence must be producible and admissible. ***Commonwealth v. Scott***, 503 Pa. 624, 470 A.2d 91, 95 (1983).

***Commonwealth v. Small***, 647 Pa. 423, 189 A.3d 961, 972 (2018) (citations omitted). "The test is conjunctive; the [petitioner] must show by a preponderance of the evidence that each of these factors has been met in order for a new trial to be warranted." ***Commonwealth v. Padillas***, 997 A.2d 356, 363 (Pa.Super. 2010).

In the case *sub judice*, Davonne's notarized statement provides as follows (verbatim):

> I am writing this letter to speak of my statement. I tried to be honest and tell the judge my reason for making a false statement against Kevin Pickard. Back when all this happened one of my reasons was the Southwest Detectives kept kicking in [indecipherable] door and taking me and my little brother to the police station and putting their hands [indecipherable] trying to force me to say things that I had know [*sic*] knowledge of **and showing me a video of Marquis leaving a store and in the process started firing a weapon in the direction of the store and asking me who was he shooting at I told them I didn't know** and they let me [indecipherable] little brother had already told them that Marquis was shooting at Kevin Pickard. I told them my little brother just was released from the hospital and he is on the medication. The officers didn't care and told me if I wanted to go home I just had to identify my cousin, Kevin Pickard, as the shooter. I was scared and [indecipherable] from being [indecipherable] and being intimidated. So I made a statement and everything that they told me to say and signed it at the time I knew I made a false statement but I wanted to go home and they released me.
>
> My reason for writing this letter is to be honest about the events that took place that day.

- 8 -

Davonne Sheppard's Notarized Statement, dated 9/25/21 (bold added).

During trial, Davonne admitted the police showed him still photographs of Wesley; however, he testified he did not know Wesley. N.T., 6/15/12, at 165. Specifically, he testified as follows when the prosecutor showed him a photo of Wesley:

> [Prosecutor]: Your Honor, at this time, I'd ask that the witness be shown what has been marked as C-26.
>
> Q: Davonne, do you recognize that person, C-26?
>
> A: No.
>
> Q: It's Marquis Wesley.
>
> A: I don't know him, but when the cops grabbed me, they showed me a picture of him.
>
> Q: All right. Had you ever seen Marquis Wesley in person?
>
> A: No.
>
> Q: You ever see him in the neighborhood down there around 67th and Greenway?
>
> A: No.
>
> Q: Never?
>
> A: I don't know anybody from 67th and Greenway. You keep saying did I ever be around 67th and Greenway. I don't know nobody from around there.

*Id.* at 165-66.

As to whether the police showed him any video from the incident, the relevant exchange occurred between the prosecutor and Davonne during trial:

> Q:….I asked if they showed you video and you said that they—
>
> A: I never seen the video before. They just show me a still shot of this video. It wasn't actually a video. It was still pictures.
>
> Q: Okay. Did you—do you recognize the person that you just watched in that video waking towards the bottom of the screen, the one wearing a hoodie?

- 9 -

A: No. It's too blurry like—

Q: All right.

*Id.* at 171. The prosecutor asked Davonne if, in a statement he made to the police, Davonne identified the person in the hoodie as Appellant. *Id.* at 172. Davonne confirmed he identified Appellant, but he indicated he did so because "they wanted me to tell them." *Id.*

Appellant now claims Davonne's September 25, 2021, notarized statement, indicating the police had shown him a video of Wesley leaving the store and shooting, contradicts Davonne's trial testimony that, not only did he not recognize Wesley, but the police never showed him a video of Wesley firing a gun. He asserts that Davonne's notarized statement suggests "he was coerced by the Philadelphia Police Department into identifying [Appellant] and that the Philadelphia Police showed him a video with the alleged victim, Mr. Wesly, shooting a firearm." Appellant's Brief at 15.

In rejecting Appellant's claim of after-discovered evidence, the PCRA court held, *inter alia*, that the statement "could only be used to impeach the credibility of Davonne as the statements made therein have no other purpose than to [suggest] that Davonne lied to the police [and during trial]." PCRA Court Opinion, filed 11/16/23, at 5. We agree with the PCRA court.

Simply put, Davonne testified at trial that he was never shown any video by the police, and he did not recognize Wesley from a photograph. When a video of the incident was played in court, Davonne testified the person in the

video was "blurry," but he admitted he had previously informed the police that the person was Appellant based on still photographs.

Inasmuch as Appellant avers Davonne's notarized statement presents "new" evidence contradicting his trial testimony, we agree with the PCRA court that the notarized statement would be used solely to impeach the credibility of Davonne. Thus, it does not qualify as after-discovered evidence.[4] **See Small**, **supra**.

For all of the foregoing reasons, we affirm the PCRA court's orders, which denied Appellant PCRA petition filed at all three trial court docket numbers.

---

[4] We note Appellant suggests he was entitled to an evidentiary hearing prior to the PCRA court dismissing his claim of after-discovered evidence. He specifically suggests the PCRA court could not have made a credibility determination regarding Davonne's notarized statement without holding a hearing. It is well settled that "[t]here is no absolute right to an evidentiary hearing on a PCRA petition, and if the PCRA court can determine from the record that no genuine issues of material fact exist, then a hearing is not necessary." **Commonwealth v. Jones**, 942 A.2d 903, 906 (Pa.Super. 2008). "[T]o obtain reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing." **Commonwealth v. Hanible**, 612 Pa. 183, 30 A.3d 426, 452 (2011). In the case *sub judice*, the PCRA court did not seek to determine the credibility of Davonne's notarized statement; but rather, the PCRA court reviewed the significance of Davonne's new statement in relation to his trial testimony, which was partially a recantation of his police statement. Specifically, the PCRA court concluded that, regardless of its credibility, Davonne's notarized statement was being offered by Appellant solely to impeach Davonne's trial testimony. Thus, the PCRA court determined from the record that Appellant was not entitled to relief, and the PCRA court did not abuse its discretion in failing to hold a hearing.

- 11 -

Orders affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/3/2024